Commonwealth *v.* King, Appellant.

Argued September 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

364

*Stephen P. Swem,* Assistant Public Defender, with him *John J. Dean,* Assistant Public Defender, and *George H. Ross,* Public Defender, for appellant.

*John G. Alford,* Assistant District Attorney, with him *Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 25, 1974:

This is a direct appeal from a judgment of sentence in the Court of Common Pleas of Allegheny County. Appellant was found guilty by a jury of second degree murder on March 30, 1973. Post-trial motions were denied and on June 30, 1973, he was sentenced to a term of seven to twenty years' imprisonment.

The underlying facts can be summarized as follows. On June 26, 1972, the victim, Michael Guy, was fatally shot in the McKeesport apartment of James and Carol McNelis, friends of the appellant. Present at the shooting were the McNelises, the victim, and Daniel King, the appellant. It is undisputed that appellant was hold-

ing the weapon when the fatal shot was fired. Appellant contends, however, that the shooting was accidental and unintentional while the Commonwealth contends that the shooting occurred with malicious intent.

Appellant charges the trial court with a number of errors. However, we will confine our discussion to the question of whether or not a proper foundation was laid for the introduction of records supposedly relating to prior convictions of the appellant.[1]

In order to bolster his position that the killing had occurred accidentally, appellant took the stand in his own behalf at trial. On rebuttal, the Commonwealth then sought to attack appellant's credibility by the introduction of certain records of convictions of one Daniel King for forgery, uttering a forged instrument, and receiving stolen goods. These records were introduced by the district attorney's merely reading them into evidence. Defense counsel strenuously objected to this procedure on two grounds: (1) that the records custodian or clerk of court was not called to authenticate the records, and (2) that the identity of the person to whom the prior convictions referred was not sufficiently established to be that of the appellant. The trial court overruled these objections, referring to the

---

[1] Appellant also charged the lower court with other errors in his brief: (1) that he did not receive a fair trial where out-dated newspaper articles concerning the trial were found in the jury room and where he was paraded in front of the jurors in handcuffs both outside and inside the courtroom; (2) that the trial court erred in admitting into evidence a properly operating automatic pistol where, at the time of the incident for which the accused is standing trial, the pistol was not properly operating as an automatic; and (3) that the appellant's right to a public trial was violated when the courtroom door was locked, thereby preventing some of appellant's key witnesses from being present when the Commonwealth's essential witnesses were testifying. However, our resolution of the impeachment evidence question makes consideration of these other matters unnecessary.

records as "official" documents but making no comment on the identity question. By this action we feel the court below erred.

The use of prior convictions to impeach the credibility of a criminal defendant has long been recognized as a legitimate prosecutorial tool, although this rule, as a whole and in part, has been the subject of much criticism. *See Commonwealth v. Bighum,* 452 Pa. 554, 562-67, 307 A. 2d 255 (1973). Much of this criticism stems from a legitimate fear that the introduction of prior convictions, even if limited to *crimen falsi* and if accompanied by a cautionary instruction, often has a significant and unwarranted effect on the outcome of a trial. As a result, it is imperative that, at the very least, certain procedural safeguards be met prior to the admission of such evidence. These prerequisites include, *inter alia,* clear proof (1) that such record is authentic and accurate, and (2) that the present defendant is the same person as that to whom the prior convictions refer.

While there is some dispute whether the authenticity and accuracy of the records were adequately established,[2] there is no question that the Commonwealth failed to establish the identity of the appellant and the defendant in the prior convictions. The only evidence

---

[2] Generally, the records custodian's testimony is produced to establish the authenticity and accuracy of the record. *See, e.g., United States ex rel. Schartner v. Pizzo,* 336 F. Supp. 1192, 1199 (M.D. Pa. 1972) ; *Commonwealth v. Connolly,* 217 Pa. Superior Ct. 201, 269 A. 2d 390 (1970). However, in the custodian's absence, a duly certified copy of the record will be considered as competent evidence. *See Commonwealth v. Socci,* 177 Pa. Superior Ct. 426, 110 A. 2d 862 (1955). Despite the court's references to the records as "official," appellant maintains that the prosecution was reading from a "master list" of indictments which would not constitute "certified" records. However, since the documents at issue here do not appear in the record, we cannot intelligently determine whether or not they were, in fact, properly authenticated.

offered to show that the Daniel King on the indictment sheet was the same Daniel King as that standing trial was the identity of name. In light of our decision in *Commonwealth v. Young*, 418 Pa. 359, 211 A. 2d 440 (1965), such evidence is insufficient to establish identity for purposes of impeaching a criminal defendant's credibility *via* his prior criminal record. In *Young*, the evidence in question was introduced through the testimony of the clerk of courts who produced a transcript, indictment, and guilty plea thereto of one "Thomas Young," a black man, nineteen years of age. We there found this evidence insufficient, even in the absence of contradiction, to establish identity for purposes of allowing the criminal records into evidence. 418 Pa. at 361-62, 211 A. 2d at 441. Speaking for the Court, Mr. Justice EAGEN enunciated the rationale for this requirement of clear proof of identity when dealing with impeachment of a criminal defendant's credibility:[3] "The importance of evidence establishing prior convictions of serious crimes for impeachment purposes cannot be overemphasized. It can, and often does, destroy a witness's credibility and significantly influences the outcome of the trial. In view thereof, it appears to us that the identity of the person should be established by something more than mere similarity in name. The name Young is not uncommon; in fact, a perusal of the current Philadelphia city telephone directory manifests fifteen listings for 'Thomas Young'. Under the circumstances, we conclude that it was prejudicial and reversible error to permit the jury to make such an im-

---

[3] Other authorities agree that while concordance of names is always evidence of identity, and sometimes sufficient to place upon the other party the duty of producing evidence to the contrary, a stricter rule is desirable where the object is the identity of one convicted of a crime. *See* WIGMORE, EVIDENCE §2529 (3d ed. 1940). *See also*, LAUB, PENNSYLVANIA TRIAL GUIDE §6.34 (Feldman ed. 1973).

portant finding on the basis of inconclusive evidence." 418 Pa. at 361-62, 211 A. 2d at 441. The instant case lacks even the kind of weak corroborative evidence of identity which was present in *Young.* Thus, any factual dissimilarity in this regard is, if anything, in appellant's favor. Moreover, we cannot say that the name "Daniel King" is sufficiently less common than "Thomas Young" to merit our distinguishing *Young* on that basis. Under these circumstances, the Commonwealth failed to carry its burden of establishing identity[4] and thus, the criminal record was erroneously admitted.

The only remaining question for our determination is whether this error requires reversal or whether it can be viewed as harmless. Because of the tremendous impact which such evidence can have on the outcome of a criminal trial, the erroneous admission of a criminal record supposedly relating to an accused will generally be deemed prejudicial. This case is no exception. The only factual issue at trial was whether the killing was accidental or intentional. On this question, there was substantial evidence which would have supported a jury's finding of accidental shooting;[5] thus, there was

---

[4] Our opinion in *Young* clearly indicates that this burden rests on the Commonwealth and that it arises even in the absence of contradictory evidence by the defendant. 418 Pa. at 361-62, 211 A. 2d at 441. Methods for meeting this burden include producing a witness from the previous trial (*see, e.g., Commonwealth v. Holley,* 358 Pa. 296, 56 A. 2d 546 (1948)), and securing a stipulation from the defendant (*see, e.g., Commonwealth v. Connolly,* 217 Pa. Superior Ct. 201, 269 A. 2d 390 (1970)). It has also been suggested that establishing identity of name, address and age would also suffice. *See* LAUB, *supra* note 3, §6.34.

[5] In addition to appellant's own insistence that the shooting was accidental, one of the Commonwealth's eyewitnesses actually characterized the event as accidental. Moreover, there was uncontradicted evidence that appellant and the victim had been "best friends," that appellant had not fled the scene of the shooting, and that appellant had insisted on accompanying the victim during the ambulance ride to the hospital.

a substantial issue as to appellant's guilt. In these circumstances, the credibility of appellant's testimony was critical. The trial court's error in dealing with the evidence of prior convictions therefore requires that we reverse and grant a new trial.

Judgment of sentence reversed and new trial granted.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.