Commonwealth *v.* Pfaff, Appellant.

154

Submitted September 17, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

Jonathan Miller, Colie Chappelle, and John W. Packel, Assistant Defenders, Dennis Kelly, Deputy Defender, and Vincent J. Ziccardi, Defender, for appellant.

Howell Rosenberg, Mark Sendrow, and Steven H. Goldblatt, Assistant District Attorneys, Abraham J. Gafni, Deputy District Attorney, Richard A. Sprague, First Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., March 31, 1975:

Appellant Henry Pfaff, convicted of statutory rape and corruption of the morals of a minor, contends that although the judge granted the appellant the right to appeal nunc pro tunc, the court erred in denying the remaining claims presented in his PCHA[1] petition.

---

1. Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. §1180-1 et seq.

According to the testimony of the complainant, Brenda Lee Calder, in July, 1971, she was on her way home when she passed appellant, his brother, and his business partner, who were loading a truck with heavy appliances. Appellant's partner, Marlin Walters, started a conversation with the complainant, who was then 13 years old, and eventually offered her part-time employment in their used appliance store located in the Kensington section of Philadelphia. The complainant thereafter worked for three or four days from 10 a.m. to 6 p.m. Appellant took the girl to and from work during that period. After regular working hours on July 30, 1971, appellant arranged for Miss Calder to work that evening.

When they returned to work on that evening, the appellant ordered Miss Calder to go to the back of the store. From there appellant pushed the complainant down into the cellar. Appellant followed her into the basement where he threatened her with physical violence if she did not perform sexual intercourse with him. After the act of intercourse, the complainant dressed herself and asked appellant to take her home. He complied, but only after threatening her with physical harm if she told anyone what he had done.

The complainant did not return to work after the sexual assault. She and her mother did, however, return to the store on a subsequent date at which time her mother demanded whatever wages were due her daughter. Finally, two weeks after the sexual assault, the complainant told her mother what appellant had done to her.

Thereafter, on August 13, 1971, Miss Calder and her mother reported the incident to the police. On that same day, Detective McKiernan accompanied Miss Calder to the appellant's appliance store where she pointed out the appellant as the man who had raped her. At that point the detective explained to the appellant the serious nature of the charge made against him and asked if appellant would mind if the detective looked around the basement. Appel-

lant proclaimed his innocence and granted permission to the detective to search the basement. Complainant had previously stated that she had been raped on a cot in the basement. Upon observing the cot, the detective arrested the appellant.

Subsequently, the appellant was indicted on charges of forcible rape, statutory rape, and corruption of the morals of a minor. Appellant was tried by a jury in March, 1972, and found guilty of statutory rape and of corrupting the morals of a minor. He was acquitted of forcible rape. Post-trial motions were denied in February of 1973. Appellant was sentenced to a term of two and one-half to seven years on the statutory rape charge; sentence was suspended on the corruption charge. No appeal was taken therefrom.

In August, 1973, appellant filed a PCHA petition. Hearing was held in November and December, 1973. On January 7, 1974, the PCHA court granted appellant the right to appeal nunc pro tunc, but otherwise denied the petition. The appellant raises several claims for relief.

The appellant first contends that a statement he made to the police was unconstitutionally obtained and, therefore, should not have been introduced into evidence at trial.

In a statement to Detective McKiernan, appellant first claimed that his brother had taken Miss Calder to the basement, that she thereafter called appellant downstairs where he observed her completely naked lying on the cot. At first he told the police that he had ordered her to get dressed and that he did not have intercourse with the girl. Later, he changed his story and stated that he had intercourse with the girl but that he was only one of three men who had engaged in consensual intercourse with her. Finally, he denied both stories. The statement was used at trial to impeach the appellant after he attempted to establish an alibi defense.

No pre-trial motion to suppress was made.[2] The facts surrounding the statement were elicited during the course of the trial. Detective McKiernan testified that after he brought the appellant to East Detective Unit, he read the appellant his "Miranda" warnings from the standard police interrogation card. He then recorded appellant's answers to the questions which appear on the reverse side of the card. When asked whether he wanted to consult with a lawyer, appellant responded affirmatively. Interrogation ceased. The appellant made two telephone calls. He apparently reached the party whom he intended to call. Upon returning to the interrogation room, appellant was again given his warnings; upon requestioning, however, appellant said that he would like to make a statement.

The United States Supreme Court made clear the law governing appellant's claim in *Miranda v. Arizona,* 384 U.S. 436, 473-74 (1966): "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. . . . If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." The Court was aware that a mere warning of a right was not sufficient to guarantee its exercise: ". . . circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators." *Miranda,* supra at 469. Once a defendant has initially expressed a desire to consult an attorney, however, there are situations in which he or she will choose subsequently to waive that right. In such a situation, the government must meet a heavy burden to show a knowing and intelli-

---

2. During the PCHA hearing, trial counsel contended that appellant denied having made any statements to the police when asked by counsel.

gent waiver. See *Escobedo v. Illinois*, 378 U.S. 478, 490 (1964). The official behavior condemned in such a situation is the use by police of threats, cajolery or trickery to overcome the defendant's will in order to secure a waiver of the defendant's right to counsel.

In the instant case, the record indicates the absence of any effort of the police to coerce, to confuse, or to deny the appellant his rights. The appellant points to *Commonwealth v. Nathan*, 445 Pa. 470, 285 A. 2d 175 (1971), and *Commonwealth v. Mercier*, 451 Pa. 211, 302 A. 2d 337 (1973), as controlling. The facts of those cases, however, highlight the kind of conduct so clearly disfavored by appellate courts. In *Mercier*, after an initial request for counsel, the investigating detectives left the accused alone. Upon their return, they presented him with the statement of a co-felon which implicated the accused. Similarly, in *Nathan*, the accused indicated a desire to speak with an attorney. The police gave Nathan a legal directory from which he chose the name of an attorney. The police then informed him that *they* had been unable to contact appellant's chosen counsel. After spending time in the lock-up, Nathan was presented with the statement of a female participant in the crime which implicated him. Further, the police told him that a statement could often be of help to an accused.

By contrast, the appellant in the present case had a specific attorney in mind. He apparently was able to contact the attorney or some other party he intended to call. Immediately thereafter, he was "rewarned"; no promises or misrepresentations were made to him. Therefore, we find no violation of appellant's rights in the acquisition or use of his statement.[3]

---

3. The appellant also attacks the use of Detective McKiernan's testimony that he saw a cot in the basement of the appliance store as the product of an illegal search. The appellant denied the existence of the cot at trial. Another defense witness, appellant's brother, testified that not only was there no cot in the basement,

The appellant next claims that comments made by the district attorney during his summation of the evidence require a reversal of conviction and a new trial. The district attorney stated in argument: "I am just about fed up to here with the character assassination of a 13-year old girl. I am absolutely certain that Mr. Pfaff, Henry Walter Pfaff and his brother Jack Pfaff had conspired to assassinate the character ----"

It is clearly unethical for a prosecutor to assert his personal opinion as to the credibility of a witness. *Commonwealth v. Potter*, 445 Pa. 284, 285 A. 2d 492 (1971). See also, ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function §5.8(b), Approved Draft; ABA Code of Professional Responsibility, Special Committee on Evaluation of Ethical Standards, DR 7-106 (C) (4) (1969). Absent an immediate curative instruction and adequate charge,[4] such comment may be reversible error.

The ABA provisions are *standards of conduct,*[5] not

---

but also that the cellar was dank, often filled with a couple of inches of water. The complainant claimed both before and at trial that she was raped on a cot in the basement. Thus, argues the appellant, the testimony was critical because credibility of the complainant was bolstered by the illegally obtained testimony of the detective. We need not reach this issue, however, because any error was at most harmless error. Appellant's statement which was introduced at trial made clear that such a cot existed and that either appellant's brother or appellant and two other men had intercourse with complainant in the basement. The detective's testimony was, therefore, at most cumulative evidence.

4.  *Commonwealth v. Martinolich*, 456 Pa. 136, 318 A. 2d 680 (1974), held that an immediate charge and a proper jury instruction did cure the potential prejudice. See *Commonwealth v. Russell*, 456 Pa. 559, 317 A. 2d 216 (1974), for an instance in which the comment was so prejudicial that no curative instruction was sufficient.

5.  We certainly do not suggest that the district attorney's statements in this case conformed to the high level of responsibility with which a prosecutor is charged. Quite to the contrary, we believe that the comments amount to a serious impropriety.

legal principles. A violation of the Code is not per se reversible error. *Commonwealth v. McNeal,* 456 Pa. 394, 319 A. 2d 669 (1974). The appellant has brought to our attention a number of cases in which our Supreme Court has reversed judgment of sentence because of a violation of the standards. There is no prophylactic rule, however, that mandates reversal for every improper comment. Our Supreme Court has ordered a new trial in the following types of situations: one, where the prosecutor brands the appellant with epithets depicting him as vicious or criminal in nature, thereby arousing the jury's passions and prejudices, ("hoodlums" and "animals", *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A. 2d 205 (1974); malicious liar, *Commonwealth v. Potter,* supra); two, where the prosecutor comments from personal knowledge or experience on the *guilt or innocence* of the accused, thereby implying the existence of some special or additional information not before the jury, (the prosecutor had "no doubt" as to the guilt of the accused after a review of the evidence in the District Attorney's file in *Commonwealth v. Russell,* 456 Pa. 559, 317 A. 2d 216 (1974)); three, where the prosecutor's comments are not a fair statement of the evidence in the case, thereby misleading the jury and usurping its function. (See e.g., *Commonwealth v. Toth,* 455 Pa. 154, 314 A. 2d 275 (1974); *Commonwealth v. Revty,* 448 Pa. 512, 295 A. 2d 300 (1972); but see, *Commonwealth v. McNeal,* supra).

In the instant case, the prosecutor did not use derogatory epithets to describe the appellant. Nor did he comment as to his personal view of the guilt or innocence of the appellant. Finally, the prosecutor's statement did not lead the jury's attention away from the evidence. It can reasonably be concluded that the prosecutor's statement was not calculated to mislead, but was an attempt at characterizing one of appellant's asserted defenses as based on fair inferences arising out of the Commonwealth's evidence. See *Commonwealth v. McHugh,* 187 Pa. Superior Ct. 568, 145 A. 2d 896 (1958).

Finally, appellant contends that he received ineffective assistance of counsel at trial.

When the claim of ineffective assistance of counsel is before our Court, we must decide whether the accused's rights have been adequately protected. *Commonwealth v. Murray,* 452 Pa. 282, 305 A. 2d 33 (1973). Such a claim for relief will prevail only if supported by the record or by other credible evidence. Id. "We cannot emphasize strongly enough . . . that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A. 2d 349, 352-353 (1967).

Appellant contends that his trial counsel failed to object to introduction of two prior consistent statements of the complainant. The record reveals, however, that in the first instance his counsel did object.[6] The second statement of complainant that appellant contends was erroneously admitted into evidence was the following: "Q. What happened when you arrived at Mr. Pfaff's place of business? A. [of Detective McKiernan] Well, we met with Mr. Pfaff, who, when we saw him, Miss Calder said that's the man that did it. Q. And did you go in and have a conversation with Mr. Pfaff? A. We did. We went to the back

---

6. "[Appellant's counsel]: Your Honor, I am going to object, I should have objected to the first question, it was beyond the scope of direct examination.

"[District Attorney]: Your Honor, I am sorry.

"[Appellant's counsel]: I don't think it is proper cross-examination. If this is going in, it should have gone in as part of the case." Despite the fact that the introduction of complainant's original statement to the police was objected to, at no point has counsel for appellant made the argument to this Court why it was error for the trial court to admit the statement.

and we explained to him exactly why we were there, that Miss Calder stated that she had been raped by him previously." The first answer amounts to little more than a report by the detective that the witness identified the appellant. The second answer is not a prior statement of the complainant — it is a report of what the detective said to the appellant; thus it was not hearsay. In neither instance did the failure to object prejudice the appellant.

The appellant also contends that failure on the part of his counsel to request an instruction on the defense of "repute" under 18 P.S. §4721 (Act of June 24, 1939, P.L. 872, §721, as amended 1966, Special Session No. 3, May 12, P.L. 84, §1) amounted to ineffective assistance of counsel. We find a reasonable basis for appellant's attorney's failure to request such a charge. The defense presented by appellant was alibi. He testified that at the time of the incident he was taking his wife to her job as a waitress. His brother testified that he and the complainant had been dating from the time she began working at the appliance store and that they were out riding on the night of the alleged rape.[7] As trial counsel attempted to pursue an alibi defense, we cannot say that it was unreasonable to fail to argue an inconsistent defense.

Judgment of sentence is affirmed.

---

7. Cf. *Commonwealth v. Amato*, 449 Pa. 592, 297 A. 2d 462 (1972), wherein defense counsel failed to ask for an instruction on voluntary manslaughter because the evidence that the accused had done the killing at all was weak. Failure to request the instruction was recognized as reasonable trial strategy.