## Commonwealth *v.* Chandler, Appellant.

20

Submitted April 14, 1975. Before Watkins, P. J., Jacobs, Hoffman, Cercone, Price, Van der Voort, and Spaeth, JJ.

E. J. *Julian,* Thomas B. *Kostolansky,* Assistant Public Defenders, and John P. *Liekar,* Public Defender, for appellant.

Paul M. *Petro,* Assistant District Attorney, and Jess D. *Costa,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., October 28, 1975:

Appellant Lawrence Chandler was convicted following a jury trial on four counts stemming from the alleged sale of heroin in violation of The Controlled Substance, Drug, Device and Cosmetic Act.[1] In this appeal he argues that the lower court erred in admitting evidence of a prior criminal record which was not properly identified to appellant and in refusing to declare a mistrial due to prejudicial comments and an improper question propounded by the prosecution. For the reasons set forth below, we will affirm the judgment of sentence.

At his jury trial in February, 1974, the appellant took the witness stand to testify in his own behalf. His testimony that he was never involved in any drug transactions, contradicted that of the Commonwealth's chief witness, narcotics agent Ernest Fullerton. The agent testified that appellant had sold him heroin on various occasions, always using an intermediary to transfer the money and the drugs. To attack appellant Chandler's credibility, the Commonwealth introduced the criminal record of Lawrence A. Chandler, also known as Bubba Chandler, showing a guilty plea to charges of forgery

---

1. Act of April 14, 1972, P.L. 233, §13(a)(30), *as amended,* 35 P.S. §780-113(a)(30) (Supp. 1975-76).

entered in the United States District Court, Western District of Pennsylvania. The record was introduced by the clerk of court for the district court who testified that he could not say that the Lawrence A. "Bubba" Chandler on the record was the same person as the appellant, and that the record showed a Washington, Pennsylvania address. Appellant Chandler had testified that he lived at various addresses in and around Washington all his life.

Appellant argues that the Commonwealth failed to prove affirmatively that the record was that of the Lawrence Chandler with whom this case is concerned. He further argues that the judge's decision to submit the question of identity to the jury, with the instruction that the record could only be considered to impeach the appellant's credibility if the jury found that the record was indeed that of the appellant, was improper. It is beyond question that in this Commonwealth the mere similarity of names, even in the absence of contradiction, is insufficient to prove that the record in question belongs to the individual on trial. *Commonwealth v. King,* 455 Pa. 363, 316 A.2d 878 (1974); *Commonwealth v. Young,* 418 Pa. 359, 211 A.2d 440 (1965). In *Commonwealth v. Young,* supra, at 362, 211 A.2d at 441, the Pennsylvania Supreme Court stated that "it appears to us that the identity of the person should be established by something more than mere similarity in name. The name Young is not uncommon; in fact, a perusal of the current Philadelphia City Telephone Directory manifests fifteen listings for 'Thomas Young.' Under the circumstances, we conclude that it was prejudicial and reversible error to permit the jury to make such an important finding on the basis of inconclusive evidence."

In the present case, somewhat more than identity with a common name in an area the size of Philadelphia was shown. The name Lawrence Chandler is less likely to be repeated in the area of Washington, Pennsylvania,

than the name of Thomas Young is in Philadelphia[2]. Also, the Lawrence A. Chandler in the federal court's record had a Washington address and the appellant had testified that he lived in the Washington area all his life. Most convincing, however, is the fact that the Lawrence Chandler with the criminal record was also known as "Bubba" Chandler. At trial the appellant regularly referred to himself as "Bubby." The coincidence of the name Lawrence Chandler, the Washington address at the time of the prior crime, and the unusual nickname is not so inconclusive of identity as to preclude the jury's consideration of the issue.

Furthermore, we see no error in the trial judge's instructions to the jury to disregard the evidence of a prior crime if it is decided that the criminal record was not that of appellant. *Young* requires that the judge make an initial determination that there is sufficient evidence of identity as a matter of law before admitting the criminal record. No harm can arise to the appellant if, after having admitted the evidence, the jury is permitted to disregard it if they are not satisfied the record is that of the appellant.

In the next argument advanced by appellant, two statements in the district attorney's closing argument are pointed to as examples of impermissible and prejudicial expressions of opinion on the appellant's credibility. In referring to the narcotics agent, Mr. Fullerton, who was responsible for Lawrence Chandler's arrest, the district

---

2. *See* J. Wigmore, Evidence §2529 (3d ed. 1940). In this treatise it is noted that, although a greater strictness is shown where the identity of an individual as an object of a crime is concerned, sufficient evidence of identity is determined on a case by case basis, taking into consideration such factors as oddness of the name and the size of the region. *See also Commonwealth v. King*, 455 Pa. 363, 316 A.2d 878 (1974) wherein it is implied that *Commonwealth v. Young*, 418 Pa. 359, 211 A.2d 440 (1965) can be distinguished in cases where the name is uncommon, or where there is other corroborating evidence.

attorney said: "It's not easy to investigate or to convict and I might say this—I have been proud to be associated with Mr. Fullerton and I think it's fair for you to reach a similar conclusion based on his demeanor in this Court Room, the way he performed in Court." Referring to the same individual, the district attorney later said, "You can believe that maybe he fabricated this but I don't think so and I don't think the facts indicate it."

As the appellant correctly notes, it is improper conduct on the part of the district attorney to express his opinion as to the credibility of a witness.[3] However, such a comment does not necessarily require reversal and a new trial. A review of the recent cases on this subject would suggest that reversal is mandated only where the comment complained of contains elements clearly inclined to create prejudice or calculated to distract or mislead the jury. *See Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974); *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275 (1974); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971); *Commonwealth v. Shaffer*, 224 Pa. Superior Ct. 564, 307 A.2d 394 (1973). Our Supreme Court has delineated the test for determining when an improper comment constitutes reversible error: "The language must be such that its 'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.' Commonwealth v. Simon, 432 Pa. 386, 394, 248 A.2d 289 (1968)." *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975). The rule was applied to a case where the objectionable com-

---

3. *Commonwealth v. Lark*, 460 Pa. 399, 333 A.2d 786 (1975); *Commonwealth v. Pfaff*, 233 Pa. Superior Ct. 153, 335 A.2d 751 (1975). *See also* ABA Project on Standards for Criminal Justice, *Standards Relating to the Prosecution Function and the Defense Function* §5.8(b) (Approved Draft 1971).

ment referred to the incredibility of the defendant's story: " '[I]f it weren't for the tragedy of this case, those lines would be some of the funniest lines in the court room, because they are utterly unbelievable'." *Id.* at 60, 337 A.2d at 881. The Court held that the refusal to declare a mistrial in that case was not an abuse of discretion.

The cases that have held that the prejudice arising from the prosecutor's statements demanded reversal, have done so on the basis of fairly strong or abusive language. Thus in *Commonwealth v. Potter,* at 286, 285 A.2d at 493, where the defendant's statement was characterized by the prosecutor as " 'a malicious lie like all the rest of your testimony'," reversal was held to be required. In *Commonwealth v. Lipscomb,* supra, a pathetic scenario depicting the victim's death was created for the jury, concluding with a statement that the defendant had to be found guilty absent resurrection of the deceased. In *Commonwealth v. Russell,* 456 Pa. 559, 562-63, 322 A.2d 127, 129 (1974), a district attorney, testifying as a witness for the Commonwealth, stated " 'there was no doubt, no doubt whatsoever that [the defendant] had masterminded this crime'," thereby clearly expressing his opinion of guilt on the central issue of the case and requiring a new trial.

It is our view that the remarks made by the prosecutor in the present case, although perhaps ill-advised, do not warrant reversal in light of this precedent. It does not readily appear that the unavoidable effect of these relatively mild comments which were directed toward the credibility of the Commonwealth's own witness, and not the lack of credibility of the defendant, was to prejudice the jury or create bias and hostility against the defendant. Furthermore, the comments barely amount to an expression of opinion on the witness's credibility. A statement that the prosecutor has "been proud to be associated with [the agent]" and that, although the jury

"can believe that maybe he fabricated this but I don't think so," hardly compares with the clearly prejudicial and often violent expressions of opinion found in the cases reviewed above. Rather, we view such comments simply as an attempt to argue the issue of credibility, possibly badly phrased, but not sufficiently prejudicial to mandate a reversal.

Finally, appellant argues that the prosecutor raised a prejudicial inference in the minds of the jurors when in questioning the appellant he suggested that Lawrence Chandler had encouraged a key witness to make himself unavailable for trial. In fact, both sides had unsuccessfully tried to reach this witness, whose central involvement in the alleged drug transactions would have made his testimony valuable in clarifying the contradictory trial theories of both sides. The defense had introduced into evidence letters, returned for failure to locate addressee, to support the claim that legitimate efforts to reach the witness had been made. The defense also spent a large portion of the closing argument suggesting that the jury could presume the witness's testimony would be adverse to the Commonwealth due to its failure to produce him.

The question propounded by the prosecutor, which the appellant contends warrants a mistrial, was as follows: "Q. Did you suggest to Mr. Kerrigan it would be a good idea if Walter did not testify?" The question was immediately objected to, the objection sustained, and the trial judge firmly instructed the jury to disregard the question. This disposition of the matter satisfied appellant's counsel for the time being, but some time later he requested a mistrial which was refused. We find that this ruling was proper and no prejudice resulted to appellant. The trial judge's immediate instruction to the jury effectively neutralized any possible prejudice attaching to appellant as a result of this remark. In addition, the judge gave a full and adequate

charge to the jury instructing them to disregard any questions by the prosecutor regarding the absent witness. In *Commonwealth v. Martinolich,* 456 Pa. 136, 318 A.2d 680 (1974), the Supreme Court held that in a strikingly similar situation to the one before us, the court's immediate instruction, coupled with his later charge to the jury, was a satisfactory remedy to the prejudicial question.

Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant contends that certain remarks made by the district attorney during his closing argument were improper, thereby requiring a reversal of his conviction.[1]

Sometime in August of 1972, Ernest Fullerton, an undercover narcotics agent for the Pennsylvania Department of Justice, met Walter Kerrigan in Pittsburgh. The agent was attempting to infiltrate Kerrigan's circle of friends who, the agent believed, were engaged in the sale of heroin. Kerrigan told the agent that he had no drugs for sale, but that he had a friend who was selling heroin in Washington County.

On August 14, 1972, Kerrigan introduced the agent to appellant for purposes of consummating a drug deal. Fullerton offered appellant $100.00. Appellant demanded that the money be handed to Kerrigan. Kerrigan and appellant entered appellant's automobile where they exchanged the money. Appellant returned with the heroin.

---

1. Appellant also alleged that the lower court erred in failing to declare a mistrial when the Commonwealth's witness failed to make a positive identification of the appellant as the same Lawrence Chandler involved in a federal conviction used to impeach the appellant; that the lower court erred in failing to declare a mistrial after the district attorney suggested that appellant had deliberately failed to produce a witness whom appellant had attempted to locate before trial. Because of my view on the issue of improper statements by the prosecuting attorney, I do not discuss the additional reasons cited in support of reversal.

Thereafter, on three separate occasions, appellant, Kerrigan, and the agent met and consummated drug transactions. On August 15, and August 23, appellant sold the agent $100.00 worth of heroin, again using a conduit to transfer possession of the drugs. At trial, the agent explained a dealer's hesitance to deal directly with a buyer: ". . . a dealer will not hand the heroin directly to you or will cause this subterfuge, where somebody else will be involved. Undercover agents have been known for the past 5 or 6 years now to be infiltrating drug dealers and in order to make it difficult and if they don't for sure know you or know who you are, they will in turn use other people to hand the heroin to you or to take the money. Someone else will take the money from you."

The final transaction also occurred on August 23. Agent Fullerton attempted to force appellant to deal directly with him. "Mr. Kerrigan walked directly to me and tried to hand the alleged heroin, the packets to me. At this time I feigned anger with Mr. Chandler and I refused to accept it from Mr. Kerrigan. Mr. Kerrigan went back to Mr. Chandler to tell him this. Mr. Chandler approached me and I said to him 'Don't you trust me?' I said 'Everybody takes turns handing the junk, or heroin to me'. Chandler then stated to me, 'You want to make money, don't you? Does it matter who hands it to you?' At this point I had to state no, and accepted the heroin from Mr. Kerrigan."

On November 10, 1972, Agent Fullerton swore out four criminal complaints against appellant. In February, 1973, the Washington County Grand Jury returned a true bill of indictment against appellant charging him in four counts with violation of §780-113 (30) of The Controlled Substance, Drug, Device and Cosmetic Act.[2] On February 7, 1974, appellant was found guilty as charged

2. Act of April 14, 1972, P.L. 233, No. 64, §13, imd. effective, as amended 1972, Oct. 26, P.L. 1048, No. 263, §1, imd. effective.

by a jury. Post-trial motions were denied on August 6, 1974. On September 11, 1974, appellant was sentenced to pay cost of prosecution and a fine of $350.00 and to undergo a term of imprisonment of four to ten years. Appeal was taken from that judgment of sentence.

After the defense closed, appellant's counsel requested that closing arguments be recorded. During the course of his summation, the district attorney made the following statements which were objected to by appellant's counsel, but which were permitted by the trial court: "It's not easy to investigate or to convict [a person of the sale of heroin] and I might say this—I have been proud to be associated with Mr. Fullerton and I think it's fair for you to reach a similar conclusion based on his demeanor in this Court Room, the way he performed in Court." Towards the end of his argument, the district attorney stated: "Fullerton is a busy agent, involved in over 100 arrests throughout the Commonwealth within a two year period. You can believe that maybe he fabricated this but I don't think so and I don't think the facts indicate it. The defendant places himself at the scene of each one of these buys that Agent Fullerton testified to."

Appellant contends that the district attorney's comments were improper because he interjected his personal view of the witness's credibility into the case.

We noted recently that "[i]t is clearly unethical for a prosecutor to assert his personal opinion as to the credibility of a witness. *Commonwealth v. Potter*, 445 Pa. 284, 285 A. 2d 492 (1971). . . . Absent an immediate curative instruction and adequate charge, such comment may be reversible error." *Commonwealth v. Pfaff*, 233 Pa. Superior Ct. 153, 335 A. 2d 751 (1975) (footnote omitted). We stated, further, however, that the ABA Standards which are cited as the standard of proper prosecutorial conduct are "*standards of conduct,* not legal principles. A violation of the Code is not per se reversible error. *Commonwealth v. McNeal,* 456 Pa. 394, 319 A. 2d

669 (1974)." *Pfaff,* supra at 160-161, 335 A. 2d at 755 (footnote omitted). Initially, we have no doubt that judged by the ABA Standards the district attorney's comments were improper: "It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence . . . of the defendant." ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function §5.8 (b) (Approved Draft 1970). The ABA Code of Professional Responsibility provides: ". . . . a lawyer shall not . . . (4) Assert his personal opinion . . . as to the credibility of a witness . . . ." ABA Special Committee on Evaluation of Ethical Standards, Code of Professional Responsibility, DR 7-106 (C) (4) (1969).

In *Pfaff,* we considered situations in which the Supreme Court has reversed a conviction because of prosecutorial misconduct: ". . . one, where the prosecutor brands the appellant with epithets depicting him as vicious or criminal in nature, thereby arousing the jury's passions and prejudices, . . .; two, where the prosecutor comments from personal knowledge . . . on the *guilt or innocence* of the accused, thereby implying the existence of some special or additional information not before the jury, . . .; three, where the prosecutor's comments are not a fair statement of the evidence in the case, thereby misleading the jury and usurping its function." 233 Pa. Superior Ct. at 161, 335 A. 2d at 755.

In the instant case, the jury heard two versions of the same incidents. The appellant did not deny being present during the alleged drug sales; he denied his involvement in those illegal transactions. Thus, the only issue for resolution by the jury was which witness to believe. The district attorney's comment that "I have been proud to be associated with Mr. Fullerton . . ." not only bolstered the agent's credibility, but also by fair implication could have led the jury to believe that the

district attorney was by this association privy to information or knowledge not before the court. As stated in *Commonwealth v. Russell*, 456 Pa. 559, 565, 322 A. 2d 127, 130 (1974): "[w]here the ultimate issues in the case rest upon a resolution of such conflicting testimony as the jury was faced with instantly, we have no alternative but to hold this is reversible error."

Judgment of sentence should be reversed and a new trial granted.

Price and Spaeth, JJ., join in this dissenting opinion.