J-S53010-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANTHONY MOYER, | : | |
| | : | |
| Appellant | : | No. 1711 WDA 2013 |

Appeal from the Judgment of Sentence June 4, 2013,
Court of Common Pleas, Cambria County,
Criminal Division at No. CP-11-CR-0000262-2012

BEFORE: DONOHUE, OLSON and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED AUGUST 26, 2014**

Anthony Moyer ("Moyer") appeals from the June 4, 2013 judgment of sentence entered by the Cambria County Court of Common Pleas following his conviction of persons not to possess firearms and possessing an instrument of crime.[1] Specifically, Moyer challenges the sufficiency of the evidence to convict him of persons not to possess firearms and the denial of his motion to suppress evidence obtained during the search of his home. We affirm.

The suppression court[2] provided the following summary of the facts of this case:

> On January 23, 2012, Portage Police Chief Edward P. Miller ('Chief Miller') sought to search and seize

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 907(a).

[2] The Honorable Patrick T. Kiniry presided over the suppression hearing. The Honorable Linda R. Fleming presided over the trial.

*Retired Senior Judge assigned to the Superior Court.

`[a]ny handgun, firearm, airgun [sic], or replica of same, and any and all ammunition' from Moyer's white 930 Caldwell Avenue mobile home.[FN]1 To accomplish this task, Chief Miller submitted both a search warrant application and an affidavit of probable cause to District Judge Richard W. Varner. The affidavit of probable cause stated:

Your Affiant is Chief Edward P. Miller, with over 34 years law enforcement experience, currently employed by Portage Borough Police Department.

On 01-22-11,[FN]2 Off. Donald Wyar was on duty, in full uniform, utilizing a marked patrol car, for Portage Borough Police Department. Off. Jeffrey Russell was on duty for Summerhill Twp. Police Dept., in full uniform, also in a marked police unit. Off. Wyar was dispatched for an unwanted person refusing to leave Harriet Kleman's 924 Caldwell Ave, Apartment B residence. Off. Wyar called Off. Russell for assistance. Upon the officer's [sic] arrival, Harriett Kleman stated Anthony Moyer was pounding on her door, refusing to leave, stating he was going to kick her ass.

Both Off. Wyar and Off. Russell proceeded to Anthony Moyer's residence, with Off. Wyar knocking on the door. Anthony Moyer refused to open the door, but had a conversation with Off. Wyar through the door, which had a window. Off. Wyar was looking through the window talking to Moyer, who attempted to entice and provoke Off. Wyar inside, stating [`]come in Baldy, I have something for you.['] Moyer then produced a black handgun and pointed it up to the window, inches away from and directly at the face of Off. Wyar. Off. Wyar yelled 'Gun' and pushed Off Russell back. Both Officers formed a perimeter securing the premises while additional assistance was summoned. Moyer eventually walked outside

- 2 -

with a phone in his hand, and was subdued by officers after deployment of a Taser. Moyer did not have the gun on his person when taken into custody. Moyer stated he hid the gun behind the dryer, but police are going to have to get a search warrant to get it.

Due to the ease in which a handgun can be concealed or disposed of, a night time [sic] search is requested.

Miller's Aff. of Probable Cause at 1.

At 1:00 AM on January 23, 2012, District Judge Richard W. Varner authorized Miller's search warrant request. The subsequent search and seizure bore three firearms: (1) a HiPoint C9 9mm pistol, (2) a Colt 0.32 caliber automatic pistol, and (3) a Springfield 39A 410 bolt shotgun. Receipt of Seized Property at 1. The Portage Police Department discovered both pistols behind Moyer's dryer and the shotgun behind his bedroom door. Of the three firearms, only the shotgun was unloaded. Next, on March 30, 2012, the Commonwealth filed five criminal charges against Moyer: (1) 18 Pa. C.S.A. §2702(a)(6) aggravated assault, (2) 18 Pa. C.S.A. §2705 recklessly endangering another person, (3) 18 Pa. C.S.A. §2706(a)(1) terroristic threats, (4) 18 Pa. C.S.A. §2701(a)(1) simple assault, and (5) 18 Pa. C.S.A. §6105(a)(1) prohibition against possessing a firearm as a result of a prior felony. In response to the Commonwealth's criminal charges, Moyer filed a Motion to Suppress.

More specifically, Moyer alleged multiple suppression claims:[FN]3

1. **Stale Information:** 'The affidavit failed to state the time when' Officers Donald Wyar ('Wyar') and Jeffrey Russell ('Russell') 'appeared uninvited at the door of [Moyer's] mobile home or whether it was daytime or nighttime.' Accordingly, because the Commonwealth's affidavit of probable [cause]

- 3 -

contained stale information, the search warrant is invalid and the Court should suppress any evidence obtained pursuant to it.

2. **Lack of Probable Cause for Search Warrant and Moyer's Arrest:** Officers Wyar and Russell lacked authorization from either the complaint they investigated or the facts in the affidavit of probable cause to (1) search Moyer's home and (2) arrest him. Therefore, because the Commonwealth lacked probable cause to search Moyer's home and arrest him, the search warrant is invalid and the Court should suppress any evidence obtained pursuant to it.

3. **Criminal Trespass:** Moyer's refusal to permit Officers Wyar and Russell to enter his home converted the officers into trespassers when they remained on his porch. Consequently, because the Commonwealth criminally trespassed on Moyer's property, the search warrant is invalid and the Court should suppress any evidence obtained pursuant to it.

4. **Omission of Particular Facts:** The affidavit remained silent regarding whether any circumstance existed that prohibited Moyer from possessing a pistol firearm. Thus, because the Commonwealth failed to include these specific facts in their affidavit of probable cause, the search warrant is invalid and the Court should suppress any evidence obtained pursuant to it.

5. **Defense of Self-in-Dwelling:** Moyer's use of the pistol (i.e., first enticing Officer Wyar into his home by 'stating come in[,] Baldy, I have something for you' and then pointing a pistol at Officer Wyar's face, which was inches away) was a lawful action to take since he was 'inside of his home.' Accordingly, because Moyer validly defended himself in his dwelling, the search warrant is invalid and the Court should suppress any evidence obtained pursuant to it.

[FN]1  The search warrant application described the premises to be searched as a:

> white mobile home with tan trim located assigned [sic] Rear 930 Caldwell Ave., with a rear entrance door at the north side, and front main entrance door on the south side with a wooden porch covered by a roof, the west side of the trailer bordering Blair St., said trailer located at the northernmost portion of property designated 930 Caldwell Ave.

Miller's Application for Search Warrant at 1.

[FN]2  Miller's application for a search warrant confirms the same date: DATE(S) of VIOLATION: 01-22-11. Miller's Application for Search Warrant at 1.

[FN]3  The bold headings accompanying Moyer's suppression arguments are the [c]ourt's interpretation of what is at the heart of those claims.

Suppression Court Opinion, 9/27/12, at 1-4 (record citations and footnote 4 omitted).

The suppression court denied Moyer's motion to suppress without a hearing on September 27, 2012.[3]  In the interim, on September 14, 2012, Judge Kiniry granted Moyer's request to sever the charge of persons not to possess firearms from the remaining charges.  Following trial, a jury convicted him of persons not to possess firearms on April 9, 2013.

On June 4, 2013, the Commonwealth and Moyer entered into a plea agreement whereby the Commonwealth would reduce the aggravated

_____

[3]  In his motion to suppress, Moyer stated that he did not believe a hearing was necessary.  Omnibus Pretrial Motion for Relief, 9/7/12, at ¶3.

assault charge to possessing an instrument of crime, to which Moyer would plead *nolo contendere*. The Commonwealth further agreed to *nol pros* all remaining charges once Moyer's judgment of sentence on the charges for which he stood convicted became final. Moyer also agreed to pay restitution, but there was no other agreement as to his sentence. The trial court accepted Moyer's plea and sentenced him to two concurrent terms of six months of probation for each conviction.

Moyer filed post-sentence motions challenging, *inter alia*, the sufficiency and weight of the evidence to support his conviction of persons not to possess firearms. The trial court took the motion under advisement, and ultimately denied relief on October 8, 2013. Moyer filed a notice of appeal on October 17, 2013, and complied with the trial court's order to file a concise statement of errors complained of on appeal.

Moyer raises two issues for our review:

1. Whether the trial court erred in failing to enter a judgment of acquittal for the offense of persons not to possess firearms inasmuch as the evidence did not suffice to prove the identity of [Moyer] as the same person convicted of a predicate enumerated offense?

2. Whether the suppression court erred in failing to suppress the evidence seized pursuant to a search warrant where the affidavit for the search warrant failed to state probable cause due to the lack of the requisite specificity and other omissions therein?

Moyer's Brief at 5.

We begin with Moyer's challenge to the sufficiency of the evidence. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Murray***, 83 A.3d 137, 151 (Pa. 2013). "We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." ***Commonwealth v. Mobley***, 14 A.3d 887, 889 (Pa. Super. 2011). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. ***Commonwealth v. Kearney***, 92 A.3d 51, 64 (Pa. Super. 2014).

The Pennsylvania Crimes Code defines persons not to possess firearms, the crime at issue, as follows:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1). It is uncontested that the offense the Commonwealth alleged Moyer to have been convicted of is enumerated in section 6105(b). **See** 18 Pa.C.S.A. § 6105(b) (including, *inter alia*, unlawful

- 7 -

restraint pursuant to 18 Pa.C.S.A. § 2902 in the list of enumerated offenses); Moyer's Brief at 11-12. It is also uncontested that Moyer was in possession of a firearm. **See** Moyer's Brief at 8. Moyer only contests the finding that the Commonwealth proved beyond a reasonable doubt that he was the person previously convicted of an enumerated offense, rendering his possession of a firearm illegal pursuant to section 6105(a)(1). Moyer's Brief at 11.

The trial court found that the evidence presented – that a person who shares the same first, middle, and last name as Moyer and lives at the same address as does Moyer – was sufficient to prove that Moyer was the person convicted of one of the enumerated offenses prohibiting him from possessing a firearm. Trial Court Opinion, 1/6/14, at 3 (citing **Commonwealth v. Chandler**, 346 A.2d 579, 581-82 (Pa. Super. 1975)). Moyer asserts that the Commonwealth was required to present "testimony of the prosecuting officer in the prior conviction" in order to satisfy its burden of proof "that the defendant on trial was the same defendant as in the prior conviction," and because they failed to present such evidence, his conviction is improper. Moyer's Brief at 13 (citing **Commonwealth v. Boyd**, 344 A.2d 864, 869 (Pa. 1975); **Commonwealth v. King**, 316 A.2d 878, 880 n.4 (Pa. 1974); **Commonwealth v. Payne**, 463 A.2d 451, 453-54 (Pa. Super. 1983)).

We find the cases relied upon by Moyer do not stand for the proposition that the prosecuting officer from the prior conviction must testify

to permit a conviction under section 6105 as Moyer contends. In **Payne**, the appellant was arrested, charged, tried and sentenced as "John Vargas." **Payne**, 63 A.2d at 454. At trial, a deputy court clerk testified that "Rickey Payne" was convicted in 1974 of a crime of violence. **Id.** at 453-54. The officer who arrested "Rickey Payne" in 1974 provided testimony to establish that Rickey Payne and John Vargas were the same person.

On appeal, the defendant argued that the evidence of his prior arrest was inadmissible, and even if admissible, "greater care should have been taken to ameliorate its possible influence on the jury towards the appellant by a limitation of the amount of detail that came into evidence." **Id.** at 453. We found that the evidence was "highly relevant, material and even necessary to establish an element of the offense charged, i.e. appellant's identity as a 'former convict' under 18 Pa.C.S.A. § 6105[,]" and was not inflammatory. **Payne**, 63 A.2d at 454-55 (emphasis omitted).

**Boyd** and **King** both involved the use of the defendant's prior record to impeach his credibility. Our Supreme Court stated: "The prerequisites for the use of a record of prior convictions to impeach the credibility of a criminal defendant include, [i]nter alia, clear proof, (1) that such record is authentic and accurate, and (2) that the present defendant is the same person as that to whom the prior convictions refer." **Boyd**, 344 A.2d at 868; **see also King**, 316 A.2d at 879. In both cases, the Court found that solely presenting evidence that the appellants, Charles Boyd and Daniel

King, shared the same name as a person who had previously been convicted of several crimes was insufficient to establish that the appellant was the person who had been convicted of the crimes. *King*, 316 A.2d at 880; *Boyd*, 344 A.2d at 869. In so holding, the Court in both cases relied upon its prior decision in *Commonwealth v. Young*, 211 A.2d 440 (Pa. 1965), in which the Supreme Court stated:

> The importance of evidence establishing prior convictions of serious crimes for impeachment purposes cannot be overemphasized. It can, and often does, destroy a witness's credibility and significantly influences the outcome of the trial. In view thereof, it appears to us that the identity of the person should be established by something more than mere similarity in name. The name Young is not uncommon; in fact, a perusal of the current Philadelphia city telephone directory manifests fifteen listings for 'Thomas Young'. Under the circumstances, we conclude that it was prejudicial and reversible error to permit the jury to make such an important finding on the basis of inconclusive evidence.

*Id.* at 441; *see King*, 316 A.2d at 880; *Boyd*, 344 A.2d at 868-69.

In the case at bar, Moyer was not previously arrested using a different name like the appellant in *Payne*, and thus the need for additional evidence to prove his identity was unnecessary. *See Payne*, 463 A.2d at 454 (stating that the appellant's use of two names for his two arrests required that "his identification be given more attention than in the typical § 6105 case"). Furthermore, unlike in *King* and *Boyd*, the Commonwealth presented more than just Moyer's first and last name to corroborate that he

was the person who had previously been convicted of a crime. The Commonwealth additionally showed that they shared the same middle initial and the same address.[4] N.T., 4/9/13, at 31, 36, 45; Commonwealth's Exhibit 1. We agree with the trial court that the *Chandler* case supports a finding of evidentiary sufficiency.

In *Chandler*, the Commonwealth sought to impeach the appellant's credibility with the use of a prior conviction of forgery. *Chandler*, 346 A.2d at 581. The Commonwealth presented the testimony of the clerk of courts regarding the criminal record of Lawrence A. Chandler, a/k/a Bubba Chandler. The clerk testified that he could not state that the appellant was in fact the prior convict in question. *Id.* Following his conviction, Chandler appealed to this Court. We began by recognizing that "[i]t is beyond question that in this Commonwealth the mere similarity of names, even in the absence of contradiction, is insufficient to prove that the record in question belongs to the individual on trial." *Id.* Differentiating the case from that of *Young*, we stated:

---

[4] The Commonwealth seeks for us also to include as evidence supporting the conviction that Moyer and the prior convict shared the same social security number. Commonwealth's Brief at 4. Although not testified to at trial, this information was included in the presentence investigation report, which the Commonwealth asserts we can consider in our review of a sufficiency challenge pursuant to our "absolute scope of review" of such claims. *Id.* at 5. We disagree that this is permissible, because, as stated above, our review is confined to "the evidence admitted *at trial*" to determine whether there is sufficient evidence to support the conviction beyond a reasonable doubt. *Mobley*, 14 A.3d at 889 (emphasis added).

In the present case, somewhat more than identity with a common name in an area the size of Philadelphia was shown. The name Lawrence Chandler is less likely to be repeated in the area of Washington, Pennsylvania, than the name of Thomas Young is in Philadelphia. Also, the Lawrence A. Chandler in the federal court's record had a Washington address and the appellant had testified that he lived in the Washington area all his life. Most convincing, however, is the fact that the Lawrence Chandler with the criminal record was also known as 'Bubba' Chandler. At trial the appellant regularly referred to himself as 'Bubby.' The coincidence of the name Lawrence Chandler, the Washington address at the time of the prior crime, and the unusual nickname is not so inconclusive of identity as to preclude the jury's consideration of the issue.

*Id.* at 581-82 (footnote omitted).

In the case at bar, Moyer shared the same first name, middle initial, and last name as the prior convict. Both reside in Cambria County, which, like Washington County, is unquestionably smaller than is Philadelphia. Furthermore, Moyer and the prior convict shared the **exact** address, as opposed to merely residing in the same county, as was the case in **Chandler**. Viewing the evidence in the light most favorable to the Commonwealth as our standard of review requires, we find the evidence was sufficient to convict Moyer of persons not to possess firearms in violation of section 6105(a)(1).

As his second and final issue raised on appeal, Moyer asserts that the suppression court erred by failing to grant his motion to suppress the evidence seized pursuant to the search warrant. "Our standard of review in

addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Thompson***, 93 A.3d 478, 484 (Pa. Super. 2014) (citation omitted). We are not bound by the trial court's legal conclusions, but must apply the law to the supported facts found by the trial court. ***Id.*** The trial court's conclusions of law are subject to our plenary review. ***Id.***

Moyer asserts two grounds for finding error. First, he states that the warrant failed to provide an address where the crime allegedly occurred or the town/municipality of the location to be searched, rendering the warrant deficient. Moyer's Brief at 18. The suppression court did not address Moyer's first argument in its opinion.[5] Our review of Moyer's motion to suppress reveals that this issue was not included therein. As such, it is waived. ***See Commonwealth v. Richter***, 791 A.2d 1181, 1186 (Pa. Super. 2002) (*en banc*) (an appellant's failure to include an issue in his motion to suppress results in waiver of that issue on appeal); Pa.R.Crim.P. 581(D) ("The motion shall state specifically and with particularity the evidence

---

[5] In its written opinion pursuant to Pa.R.A.P. 1925(a), the trial court relies upon the written opinion authored by the suppression court in support of Moyer's claim of error relating to the denial of his motion to suppress. ***See*** Trial Court Opinion, 1/6/14, at 7.

- 13 -

sought to be suppressed, the grounds for suppression, and the facts and events in support thereof.").

In his second argument in support of his claim, Moyer asserts the following:

> Furthermore, since the incident that Officer Wyar was investigating, *i.e.*, '… Anthony Moyer was pounding on her door, refusing to leave, stating he was going to kick her ass.", [*sic*] amounted to no more than a summary offense and certainly did not authorize an arrest without a warrant pursuant to **Pa.R.Crim.P. 502(2)**, Officer Wyar was a trespasser, a peeping tom, after Anthony Moyer refused to open the door…', [*sic*] and, from that point, the plain view doctrine did not avail. Thus, the events that were described thereafter in the affidavit cannot be characterized as evidence of a crime, but rather described an individual acting lawfully within his residence with a trespasser at the door.

Moyer's Brief at 18-19. The suppression court found that the police were not trespassers, but were present at Moyer's home to investigate his involvement in a reported crime. Suppression Court Opinion, 9/27/12, at 9. The police knocked on the door, and Moyer refused to open it. *Id.* They did not attempt to search the home or seize of any property without a warrant. *Id.* Furthermore, the court found that Moyer did not tell the police to leave the premises at any time, and instead engaged them in conversation through his door. *Id.* The suppression court concluded: "Nothing in these facts suggests that the [o]fficers trespassed criminally on Moyer's

property[,] which would allegedly render any evidence obtained through the subsequent search warrant inadmissible." *Id.*

At the outset, we fail to see how this argument relates in any way to the issue raised on appeal, *i.e.*, the warrant failed to state probable cause to search Moyer's residence based upon a lack of specificity and "other omissions[.]" *See* Moyer's Brief at 5, 14. Furthermore, even assuming this argument does relate to the issue he preserved for appeal, he cites no authority in support of his bald assertion that his failure to open his door to the police renders the police officers trespassers, which in turn permits him to brandish a gun and threaten them. Indeed, as stated by the suppression court, there is nothing in the record that supports a finding that the officers trespassed on his property or in any way behaved unlawfully. *See* 42 Pa.C.S.A. § 8952(1) ("Any duly employed municipal police officer shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office anywhere within his primary jurisdiction as to: (1) Any offense which the officer views or otherwise has probable cause to believe was committed within his jurisdiction[; or] (2) Any other event that occurs within his primary jurisdiction and which reasonably requires action on the part of the police in order to preserve, protect or defend persons or property or to otherwise maintain the peace and dignity of this Commonwealth.").

The issuance of a constitutionally valid search warrant requires that police provide the issuing authority with sufficient information to persuade a reasonable person that there is probable cause to conduct a search, based upon information that is viewed in a common sense manner. ***Commonwealth v. Housman***, 986 A.2d 822, 843 (Pa. 2009). The issuing authority must determine whether, given the totality of the circumstances presented, there is a fair probability that evidence of a crime or contraband will be found in a particular location. ***Id.*** The task of the reviewing court is to ensure that the issuing authority had a substantial basis to conclude that probable cause existed. ***Id.***

Our review of the request for a search warrant and its accompanying affidavit of probable cause supports the facts as found by the suppression court. The police were lawfully present at Moyer's home to investigate his role as the perpetrator in a reported crime. Affidavit of Probable Cause, 1/23/12. Moyer "attempted to entice and provoke Off[icer] Wyar inside" and then brandished a firearm and pointed it at Officer Wyar's face. ***Id.*** When Moyer exited his home and was arrested, he told the police that he hid the gun behind his clothes dryer. ***Id.***

In requesting a search warrant for firearms at Moyer's residence, the police were investigating the crimes Moyer committed against Officer Moyer, *to wit*, aggravated assault and recklessly endangering another person. ***See*** 18 Pa.C.S.A. § 2702(a)(6) ("A person is guilty of aggravated assault if he

- 16 -

[…] attempts by physical menace to put any of the officers, […] while in the performance of duty, in fear of imminent serious bodily injury[.]"); 18 Pa.C.S.A. § 2705 ("A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.").  We find no error in the trial court's conclusion that the police presented sufficient probable cause that Moyer had committed these crimes and that evidence of the crimes – a gun – would be found in Moyer's home.  **See Housman**, 986 A.2d at 843.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/26/2014</u>