344 A.2d 864
**COMMONWEALTH of Pennsylvania**
v.
**Charles Patrick BOYD, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 8, 1974.

Decided Oct. 3, 1975.

John J. Dean, John R. Cook, Nancy N. Nowlis, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., John M. Tighe, First Asst. Dist. Atty., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Charles Boyd, was indicted on a bill charging murder and voluntary manslaughter. At the conclusion of a trial before a judge and jury, appellant was found guilty of voluntary manslaughter. Post-trial motions were filed and subsequently denied. A sentence of from five to ten years imprisonment was imposed. This appeal followed.

Initially, appellant contends that the evidence adduced at trial was insufficient to support a verdict of voluntary manslaughter.

■■ The task of an appellate court in reviewing the sufficiency claim is to determine whether accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime or crimes of which he has been convicted. See *Commonwealth v. Bundy*, 458 Pa. 240, 328 A.2d 517 (1974); *Commonwealth v. Williams*, 455 Pa. 539, 316 A. 2d 888 (1974); *Commonwealth v. Fostar*, 455 Pa. 216, 317 A.2d 188 (1974); *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973); *Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972). Moreover, in passing upon such a claim, the entire trial record must be evaluated and all evidence actually received must be considered, whether the trial rulings thereon were right or wrong. *Commonwealth v. Tabb*, 417 Pa. 13, 16, 207 A. 2d 884, 886 (1965).

The pertinent facts with regard to this appeals as follows.

On January 21, 1973, at approximately 3:10 A.M., officers of the Pitcairn Police Department responded to a call originating from appellant Charles Boyd's residence. Upon arriving at the Boyd home, the officers were informed by the appellant that he had shot his wife while demonstrating to her how to handle a weapon. Entering the bedroom of the Boyd home, the officers observed the victim's partially clothed body in a pool of blood upon the bed. The room was described as being in general disarray with clothes on the floor; other articles of clothing strewn about the foot of the bed; dresser drawers pulled out; three or four suitcases at the foot of the bed; and the receiver of the bedroom telephone disconnected from the base. The weapon, a .38 caliber Smith and Wesson, was found at the foot of the bed.

Homicide detectives confiscated the weapon and observed that there were two spent cartridges in the cham-

ber. After further investigation, it was determined that the victim had received one bullet wound and a second bullet was retrieved from the wall in the bedroom three or four feet above the head of the victim.

Testimony of a forensic pathologist associated with the Allegheny County Coroner's Office revealed that a bullet entered the left side of the victim's neck severing the superior thyroid artery thereby causing death. Powder wounds were detected inside the wound leading the pathologist to opine that the murder weapon was held no more than six inches from the victim's neck at the time it was discharged.

A ballistics expert attached to the Pittsburgh Police Department testified that both the bullet recovered from the victim's neck and that from the bedroom wall were fired from the same weapon that was originally observed in appellant's bedroom. The ballistics expert testified further that the only possible manner in which the instant weapon could be fired in the double action position would be to pull the trigger. He specified the amount of pressure required to fire the weapon: to fire the weapon by trigger required from between eight pounds eleven ounces to nine pounds three ounces of pressure and to fire the weapon with the hammer cocked required between three pounds three ounces to three pounds eleven ounces of pressure.

Appellant testified that the shooting was accidental. When appellant arrived home early on January 21st, he found garbage cans strewn before his house door and his wife in the bedroom upset due to a fear that prowlers were outside the house. On a dresser near their bed, appellant observed their gun with the hammer pulled back. Appellant proceeded to show his wife how to uncock the gun. Attempting to put the weapon in a double action position it accidentally went off, lodging a bullet in the wall above their bed. The firing frightened the Boyd's two dogs, a Great Dane and a Doberman Pinscher. As

appellant's wife proceeded to go to bed, the appellant attempted to unload the weapon. Without warning, the appellant's Doberman Pinscher struck appellant from behind, pushing him forward causing the gun to be fired and the bullet to strike his wife.

In support of his claim that the evidence presented was insufficient to support his conviction, appellant advances two arguments: (1) the Commonwealth failed to present sufficient evidence to justify a finding of murder, specifically, that there was no showing of malice, and (2) the record is absent evidence which might imply passion or provocation, thus, negating the jury's verdict of voluntary manslaughter.

With regard to appellant's initial argument, it is noted that:

"[Malice] consists either of an express intent to kill or inflict great bodily harm, or of a ' "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty" ' indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life. *Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911 (1963)." *Commonwealth v. Chermansky*, 430 Pa. 170, 175, 242 A.2d 237, 240–41 (1968). See *Commonwealth v. Coleman*, supra. "Legal malice may be inferred and found from the attending circumstances of the act resulting in death. *Commonwealth v. Bowden*, Pa., 309 A.2d 714 (1973)." *Commonwealth v. Coleman*, supra [455 Pa.], at 510, 318 A.2d at 717; *Commonwealth v. Chermansky*, supra; *Commonwealth v. Lawrence*, 428 Pa. 188, 193, 236 A.2d 768, 771 (1968).

"Malice may be inferred from the use of a gun upon a vital part of the body, and the finder of fact is not required to ignore this inference merely because the defendant testifies that he did not intend to take a person's life. *Commonwealth v. Gidaro*, 363 Pa. 472, 70

A.2d 359 (1950)." *Commonwealth v. Robinson*, 452 Pa. 316, 323, 305 A.2d 354, 358 (1973).

*Commonwealth v. Boyd*, 461 Pa. 17, 334 A.2d 610, 613 (1975).

■ In *Commonwealth v. Whitaker*, 440 Pa. 143, 269 A.2d 886 (1970), we were presented with a case factually similar to the one at bar. The defendant Whitaker admitted shooting the deceased while the two were alone. He testified that during an argument the deceased obtained a revolver from a closet shelf and that as he tried to take the weapon from the deceased, it accidentally discharged. There we held, despite Whitaker's testimony to the contrary, that where it is established that the accused had sole control over the weapon at the time of its discharge and that the weapon was used upon a vital part of the body, a jury could properly infer malice sufficient to sustain the charge of murder. *Id.* at 145–146, 269 A. 2d at 887–888. In the instant appeal, it is conceded, even under the appellant's version, that he was in sole possession of the weapon and that the projectile entered a vital part of the body of the victim. Whether the discharge was caused by the voluntary act of appellant or inadvertently as a result of his being pushed by his dog, was a question properly to be resolved by the finder of fact. See *Commonwealth v. Boyd, supra,* 461 Pa. at 23, 334 A.2d at 613.

In the same vein, appellant contends that there was no evidence presented that he was guilty of voluntary manslaughter, i. e., no evidence was adduced that he acted in a fit of passion or in response to provocation.

■■ It is settled law in this Commonwealth that a verdict of voluntary manslaughter will be sustained absent evidence of passion or legal provocation provided that the testimony would support a finding of murder. *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974) (Opinion In Support of Affirmance); *Common-*

*wealth. v. Hill,* 444 Pa. 323, 326, 281 A.2d 859, 860 (1971); *Commonwealth v. Hoffman,* 439 Pa. 348, 356–357, 266 A.2d 726, 730–731 (1970); *Commonwealth v. Harry,* 437 Pa. 532, 535, 264 A.2d 402, 404 (1970) (per curiam); *Commonwealth v. Dennis,* 433 Pa. 525, 528–529, 252 A.2d 671, 672–73 (1969); *Commonwealth v. Cooney,* 431 Pa. 153, 244 A.2d 651, 653 (1968); *Commonwealth v. Pavillard,* 421 Pa. 571, 576–577, 220 A.2d 807, 810 (1966); *Commonwealth v. Frazier,* 420 Pa. 209, 211–213, 216 A.2d 337, 338 (1966); *Commonwealth v. Frazier,* 411 Pa. 195, 202, 191 A.2d 369, 373 (1963); *Commonwealth v. Moore,* 398 Pa. 198, 157 A.2d 65 (1959); *Commonwealth v. Nelson,* 396 Pa. 359, 363, 152 A.2d 913, 915 (1959); *Commonwealth v. Steele,* 362 Pa. 427, 430, 66 A.2d 825, 827 (1949); *Commonwealth v. Arcuroso,* 283 Pa. 84, 87, 128 A. 668, 670 (1925); *Commonwealth v. Kellyon,* 278 Pa. 59, 61–62, 122 A. 166, 167 (1923); *Commonwealth v. McMurray,* 198 Pa. 51, 60, 47 A. 952, 953 (1901). As indicated above, the jury could have quite properly, under the facts of this case, returned a verdict of second degree murder. The evidence was sufficient to support the jury's finding of voluntary manslaughter.

Appellant next contends that the introduction of prior convictions to impeach his credibility was improper and in violation of certain procedural safeguards mandated by this Court. See *Commonwealth v. King,* 455 Pa. 363, 316 A.2d 878 (1974); *Commonwealth v. Young,* 418 Pa. 359, 211 A.2d 440 (1965). The prerequisites for the use of a record of prior convictions to impeach the credibility of a criminal defendant include, *inter alia,* clear proof, (1) that such record is authentic and accurate, and (2) that the present defendant is the same person as that to whom the prior convictions refer.

In the instant appeal, the prosecution introduced for the purpose of attacking appellant's credibility, prior convictions on the charges of rape, aggravated assault

and battery, and assault and battery. A timely objection was made by defense counsel, which was subsequently denied by the trial court, that the prosecution had not established that the present defendant was the same person named in the criminal record then sought to be introduced.

Appellant also argues strenuously that there was no proper authentication of this document. We need not address that issue in view of our agreement that the Commonwealth failed to establish identification. The only evidence offered to show that Charles Boyd on the indictment sheet was the same Charles Boyd as that standing trial, was the identity of the name. In speaking on this very issue, this Court per Mr. Chief Justice JONES, emphatically declared that:

"Such evidence is insufficient to establish identity for purposes of impeaching a criminal defendant's credibility *via* his prior criminal record. In *Young,* the evidence in question was introduced through the testimony of the clerk of courts who produced a transcript, indictment, and guilty plea thereto of one 'Thomas Young,' a black man, nineteen years of age. We there found this evidence insufficient, *even in the absence of contradiction, to establish identity for purposes of allowing the criminal records into evidence.* 418 Pa. at 361–62, 211 A.2d at 441. Speaking for the Court, Mr. Justice Eagen enunciated the rationale for this requirement of clear proof of identity when dealing with impeachment of a criminal defendant's credibility: 'The importance of evidence establishing prior convictions of serious crimes for impeachment purposes cannot be overemphasized. It can, and often does, destroy a witness's credibility and significantly influences the outcome of the trial. In view thereof, it appears to us that the identity of the person should be established by something more than mere similarity in name. The name Young is not uncom-

mon; in fact a perusal of the current Philadelphia city telephone directory manifests fifteen listings for "Thomas Young". Under the circumstances, *we conclude that it was prejudicial and reversible error to permit the jury to make such an important finding on the basis of inconclusive evidence.*' 418 Pa. at 361–62, 211 A.2d at 441. The instant case lacks even the kind of weak corroborative evidence of identity which was present in *Young*. Thus, any factual dissimilarity in this regard is, if anything, in appellant's favor. Moreover, we cannot say that the name 'Daniel King' is sufficiently less common than 'Thomas Young' to merit our distinguishing *Young* on that basis. Under these circumstances, the Commonwealth failed to carry its burden of establishing identity and thus, the criminal record was erroneously admitted."

*Commonwealth v. King, supra* at 367–368, 316 A.2d at 880. (Emphasis added) (Footnotes omitted).

██ In the instant appeal, defense counsel specifically objected on the basis that there was insufficient evidence to establish identification for purposes of impeachment. Yet despite this objection, having called to the trial court's and prosecution's attention that their actions were at variance with case law, *Commonwealth v. King, supra* and *Commonwealth v. Young, supra,* the court permitted the use of prior convictions to impeach appellant's credibility. The burden of establishing identity rests on the Commonwealth. *Commonwealth v. King, supra,* 455 Pa. at 368, n. 4, 316 A.2d at 880 n. 4; *Commonwealth v. Young, supra,* 418 Pa. at 361–362, 211 A.2d at 441. There are various methods available in meeting this burden which include producing a witness from the previous trial and securing a stipulation from the defendant. However, in the case at bar no effort was made on the part of the Commonwealth to secure corroborative evidence of the identity of the person referred to in the record.

In accordance with our decisions in *King, supra* and *Young, supra,* we find the trial court erred in permitting the introduction over objection of these records of conviction to impeach appellant's credibility where there was lacking sufficient identification to establish the identity of the accused with that of the person to whom the prior convictions referred.

Judgment of sentence reversed and a new trial awarded.

ROBERTS and MANDERINO, JJ., concur in the result.