364 A.2d 299

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey L. FARLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 16, 1976.

Decided Oct. 8, 1976.

Robert P. Grim, Reading, for appellant.

Grant E. Wesner, Deputy Dist. Atty. for Law, Charles M. Guthrie, Reading, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On May 17, 1974, after a jury trial, appellant Jeffrey L. Farley was convicted of murder of the first degree. The court imposed sentence of life imprisonment. Appellant appealed claiming that certain written and oral statements secured from him while in police custody

should have been suppressed.[1]   We agree, reverse the judgment of sentence and remand for a new trial.[2]

Appellant's conviction arose from a robbery and shooting of the proprietor of Timber's Variety Store in Reading, Pennsylvania, on October 27, 1972.   The proprietor died a week later as a result of gunshot wounds received during the robbery.   Appellant, a sixteen year old with an I.Q. of 70, was first contacted by Reading police at approximately 4:00 p. m., on November 7, when Officer Charles Hymon stopped appellant on the street.   Hymon, who was investigating a gun incident unrelated to this case, asked appellant whether he was carrying a weapon. Appellant stated that he was unarmed.   Hymon requested appellant to accompany him to the officer's home, which was nearby.   Apparently, numerous other neighborhood residents joined the two and a discussion ensued in front of Hymon's home concerning a recent neighborhood fight.

Hymon decided that he needed assistance in handling what he described as a "neighborhood squabble" and called city hall.   Uniformed police arrived at the scene shortly thereafter, and several people, including appellant, were then transported by police car to the police station for questioning.   Hymon stated at the suppression hearing that, in his view, appellant had committed no crime in the officer's presence and that appellant had not been placed under arrest prior to being taken to city hall.

Appellant arrived at city hall at approximately 4:30 p. m., and was questioned by Officer Ronald Mest of the ju-

1.   This direct appeal is brought pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1976).

2.   Because we reverse appellant's judgment of sentence on this ground, we do not reach his other assignments of error: (1) that the Commonwealth conducted a prejudicial cross-examination of appellant; and (2) the trial court erred in finding appellant competent to stand trial.

venile division. Mest testified that appellant was detained for questioning concerning the unrelated gun possession incident which had been the subject of appellant's initial stop. The officer did not question appellant concerning the "neighborhood squabble" which occasioned the detention. Appellant again denied possessing any firearm.

At approximately 5:30 p. m., Officer Stratton Marmarou and, shortly thereafter, Officer Joseph Orlando arrived from the detective division and began to interrogate appellant. Marmarou testified that, after being given his *Miranda* warnings, appellant admitted his involvement in numerous armed robberies in the city. Orlando testified that he told appellant that the police suspected him of being involved in the robbery-murder that is the subject of this appeal. At approximately 6:00 p. m., appellant admitted that he did participate in the crime but denied that he had either entered the store or shot the victim.

Appellant was transferred to the detective division after making this first admission. The police made no effort to have appellant arraigned during the detention or to have an adult relative consult with him. Appellant's uncle arrived at the station at approximately 6:30 p. m., and assisted police in searching appellant's residence pursuant to search warrants obtained after appellant's confession. However, there is no indication in the record that appellant was allowed to confer with his uncle or any other person concerning either the circumstances of his detention or waiver of constitutional rights.

At 11:45 p. m., seven hours after his arrival at the police station, appellant was again read *Miranda* warnings and was subjected to a second interrogation session. This lasted until approximately 2:55 a. m., November 7, when a full written confession was signed by appellant. Appellant still denied the actual shooting of the victim.

Appellant was placed in a holding cell after the second interrogation and remained there until 9:00 p. m., 29 hours after his initial detention. At that time, after being confronted by his co-defendant, appellant admitted to the actual shooting. This statement was suppressed by the suppression court as a product of unnecessary delay between arrest and arraignment. See Pa.R.Crim.P. 130 (formerly 118); Commonwealth v. Futch, 447 Pa. 389, 290 A.2d 417 (1972). (The validity of the order suppressing this third confession is not before us on this appeal.) Appellant was not charged with murder until 7:15 p. m., November 9, and not preliminarily arraigned until 9:00 p. m., that day, approximately 53 hours after he was brought to the police station.

Appellant contends that his November 7 oral statement and written confession should have been suppressed because: (1) they were the product of unnecessary delay between arrest and arraignment in violation of *Commonwealth v. Futch,* supra, and Pa.R.Crim.P. 130; (2) appellant was not allowed to confer with an interested adult relative prior to waiving his constitutional rights as required by our decision in *Commonwealth v. Mc-Cutchen,* 463 Pa. 90, 343 A.2d 669 (1975); (3) in view of appellant's age and low intelligence, the statements were not voluntary; and (4) appellant was subjected to an illegal arrest and his admissions were a product of that arrest. We agree with appellant's fourth contention and reverse the judgment of sentence. (We therefore do not reach the merits of appellant's other contentions.)

It is an axiomatic principle of our constitutional system that a person may not be lawfully arrested absent a showing of probable cause that he or she has committed or is committing a crime. U.S.Const. amend. IV; Pa.Const. art. I, § 8; *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Jackson,* 459 Pa. 669, 331 A.

2d 189 (1975). Evidence obtained following an illegal arrest must be suppressed unless the Commonwealth can establish that the evidence is sufficiently purged of any taint from the illegal arrest. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* supra; Pa.Const. art. I, § 8; *Betrand Appeal,* 451 Pa. 381, 303 A.2d 486 (1973).

Here, the Commonwealth does not contend and the suppression court does not suggest that there was probable cause to arrest appellant prior to his arrival at the juvenile division. Nor could the record support such a finding. The arresting officer himself stated that he did not believe appellant had committed a crime. There is absolutely no evidence to support a finding of probable cause that appellant possessed a firearm, the alleged offense for which appellant was initially detained.

However, the suppression court found that probable cause was not necessary in the circumstances of this case because: (1) appellant's detention was voluntary, and he was not subjected to an arrest at all; and (2) assuming that appellant had been subjected to an illegal arrest, the confessions were both voluntary and sufficiently free of taint from the illegal arrest. We do not agree.

We must first determine when appellant was placed under arrest. This Court had adopted the following test for determining whether an arrest has been made:

> "An arrest may be accomplished by 'any act that indicates an intention to take [a person] into custody and subjects him to the actual control and will of the person making the arrest.'"

*Commonwealth v. Bosurgi,* 411 Pa. 56, 68, 190 A.2d 304, 311 (1963) (quoting from 5 Am.Jur.2d Arrest § 1 at 695); accord, *Commonwealth v. Daniels,* 455 Pa. 552, 555, 317 A.2d 237, 238–39 (1974); *United States v. Lampkin,* 464 F.2d 1093, 1095 (3rd Cir. 1972).

■ Under this standard, an arrest may be effectuated without the actual use of force and without a formal statement to the detainee that he is being arrested. *Commonwealth v. Bosurgi,* supra; *Commonwealth v. Daniels,* supra; *United States v. Lampkin,* supra. Moreover, an arrest cannot be disguised by the use of such terms as "investigatory detention." *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Commonwealth v. Fogan,* 449 Pa. 552, 556–57, 296 A.2d 755, 758 (1972). When a person is actually restrained of his freedom by the police and taken into custody, an arrest has occurred and the constitutional protections must be observed. This Court and the Supreme Court of the United States have specifically condemned the use of "dragnet arrests" for investigating crime. As we stated in *Fogan* :

"[W]e specifically condemn this type of 'dragnet arrest' . . . particularly where it results in hours of involuntary confinement. Such a practice can only lead to the illegal and unjust detention of innocent persons and raise serious doubts in the minds of all good citizens as to whether or not the police live within the law they are charged with upholding. The Commonwealth's position that [appellant's] police custody (before he confessed) was not an 'arrest,' but merely the act of detaining and interviewing possible material witnesses is belied by the facts and rejected by every pertinent legal decision. See *Davis v. Mississippi* [supra] . . . ."

449 Pa. at 556–57, 296 A.2d at 758.

■ Here, appellant was directed to accompany an officer to the officer's home. Appellant and others became involved in a "neighborhood squabble" while in front of the home that, according to the officer's own testimony, did not constitute any crime. Nevertheless, uniformed police officers were called to the scene and several persons, including appellant, were taken to the police sta-

tion. When appellant arrived at the station, he was subjected to repeated interrogations concerning matters unrelated to the "squabble" prior to securing any confession. There is absolutely no basis for a finding that appellant was free to refuse to comply with police orders taking him into custody or free to leave the police station once he arrived. This is precisely the type of police procedure condemned in *Fogan*. Because the police, by their actions, "indicated an intention to take [appellant] into custody and . . . subject[ed] him to [their] actual control and will" and arrest occurred at least by the time appellant was taken to the police station.[3] See *Commonwealth v. Daniels*, supra; *Commonwealth v. Kloch*, 230 Pa.Super. 563, 573–74, 327 A.2d 375, 381–82 (1974).

Finally, we must conclude that appellant's confessions were impermissibly tainted by the illegal arrest and therefore must be suppressed. The relevant test for determining whether a confession following an illegal arrest must be suppressed is:

> " . . . 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (Citations omitted.)

*Wong Sun v. United States*, supra, 371 U.S. at 488, 83 S. Ct. at 417; accord, *Brown v. Illinois*, supra, 422 U.S. at 597, 95 S.Ct. at 2259; *Commonwealth v. Bruno*, 466 Pa. 245, 255, 352 A.2d 40, 45 (1976); *Commonwealth v. Whitaker*, 461 Pa. 407, 412, 336 A.2d 603, 606 (1975); *Betrand Appeal*, supra, 451 Pa. at 381, 303 A.2d at 490. The challenged confession may be purged of the primary taint only if (1) it results from an intervening act of free will which is free of any element of coerciveness due

---

3. For the purposes of this appeal, we need not determine whether appellant was arrested prior to being taken to the police station.

to the unlawful arrest, or (2) the connection between the arrest and the confession has become so attenuated as to dissipate the taint. *Commonwealth v. Whitaker,* supra, 461 Pa. at 414–17, 336 A.2d at 607–08; *Betrand Appeal,* supra, 451 Pa. at 388–89, 303 A.2d at 490; *Commonwealth v. Bishop,* 425 Pa. 175, 183, 228 A.2d 661, 666, cert. denied, 389 U.S. 875, 88 S.Ct. 168, 19 L.Ed.2d 159 (1967); see *Wong Sun v. United States,* supra, 371 U.S. at 486, 491, 83 S.Ct. at 416, 419. Moreover, once the illegal arrest has been established, the Commonwealth has the burden to establish that the confession "has been come at 'by means sufficiently distinguishable to be purged of the primary taint' . . . ." *Betrand Appeal,* supra, 451 Pa. at 389, 303 A.2d at 490.

■ This Court has enumerated two factors of major significance in determining the relationship between the illegal arrest and subsequent confession:

" '(a) the proximity of an initial illegal custodial act to the procurement of the confession; and

(b) the intervention of other circumstances subsequent to an illegal arrest which provide a cause so unrelated to that initial illegality that the acquired evidence may not reasonably be said to have been directly derived from, and thereby tainted by, that illegal arrest.' "

*Betrand Appeal,* supra at 389, 303 A.2d at 490 (quoting from *Commonwealth ex rel. Craig v. Maroney,* 348 F.2d 22, 29 (3d Cir. 1965), cert. denied, 384 U.S. 1019, 86 S. Ct. 1966, 16 L.Ed.2d 1042 (1966)).

■ Applying these standards to the facts of this case, there can be no doubt that appellant's confession was impermissibly tainted by the illegal detention. The record shows no intervening events to attenuate the taint: appellant's oral and written admissions came shortly after his arrest; he was not allowed to leave the police station; and he did not have contact with anyone

during the detention. Rather, he was subjected to continuous police control and interrogation.

Although appellant was given *Miranda* warnings, this fact, standing alone, is insufficient to dissipate the taint of the illegal arrest. *Brown v. Illinois,* supra; *Commonwealth v. Whitaker,* supra; *Commonwealth v. Daniels,* supra. As Mr. Justice Blackmun stated in *Brown,* speaking for the Supreme Court of the United States:

> "Arrests made without warrant or without probable cause, for questioning or 'investigation,' would be encouraged by the knowledge that evidence derived therefrom hopefully could be made admissible at trial by the simple expedient of giving *Miranda* warnings . . . . [T]he *Miranda* warnings, *alone* and *per se,* cannot always make the act [of confessing] sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality [of the arrest] and the confession. They cannot assure in every case that the Fourth Amendment violation has not been unduly exploited."

422 U.S. at 602–03, 95 S.Ct. at 2261.

In the circumstances of this case, the Commonwealth has failed to meet its burden of showing that appellant's confessions were not tainted by the illegal arrest. They must therefore be suppressed. *Commonwealth v. Whitaker,* supra; *Commonwealth v. Jackson,* supra; *Commonwealth v. Daniels,* supra; *Betrand Appeal,* supra.

Judgment of sentence reversed; case remanded for new trial.

JONES, C. J., and EAGEN and POMEROY, JJ., concur in the result.