380 A.2d 769

**COMMONWEALTH of Pennsylvania**

v.

**Robert MORTON, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued April 21, 1977.

Decided Dec. 1, 1977.

Lawrence S. Rosenwald, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Michael R. Stiles, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Robert Morton, was tried by a judge sitting without a jury and convicted of voluntary manslaughter for the shooting death of Robert Sholer. He was also convicted of possession of an instrument of crime. Post-verdict motions were denied and appellant was sentenced to three-to-ten years' imprisonment on the manslaughter conviction, with a concurrent one-and-one-half-to-three-year sentence for the weapons conviction. This direct appeal followed.[1]

Appellant claims the court below erred in refusing to suppress a confession which he had given to police. Appellant argues that the statement was the product of unnecessary delay between arrest and arraignment and thus violative of Pennsylvania Rule of Criminal Procedure 130 and our decision in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). We agree and must, therefore, reverse the judgments of sentence.

The facts are as follows. On December 1, 1974, at 11:25 p. m., the Philadelphia police responded to a radio call reporting a shooting at 5225 Schuyler Street. Upon arrival, the police saw appellant and a woman, Linda Lewis, standing inside the apartment entrance. Police observed the victim's body, which was immediately taken to Germantown Hospital.

---

1. The weapons conviction was appealed to Superior Court, which, on December 12, 1975, certified the appeal to this court.

When questioned, appellant told police that the victim had been shot when a blue Cadillac El Dorado, with two black males in it, had driven by and fired a single shot. Appellant claimed that he, the victim, Ms. Lewis and Larry DeVore had been walking home from a funeral home when the shooting occurred.

A homicide detective at the scene ordered a uniformed officer to take appellant to the Police Administration Building. Before appellant was placed in the back of the police van, an officer patted appellant down and discovered five spent .32 caliber shells in his pocket. Appellant was handcuffed, placed in the back of the van, and taken to police headquarters, where he arrived at 1:10 a. m.

Appellant was given his *Miranda* warnings and was then intermittently questioned until 8:07 a. m. During this same period, police were questioning DeVore, Ms. Lewis, and two black males who had been picked up driving a blue Cadillac fitting the description given by appellant. During this entire period, appellant denied any involvement in the homicide.

Between 8:00 a. m. and 10:00 a. m., both Ms. Lewis and DeVore gave statements which accused appellant of shooting the victim. Appellant was confronted with these statements at 10:04 a. m. Following the readministering of the *Miranda* warnings, appellant gave an inculpatory statement, which was completed at 12:15 p. m. Appellant was subsequently arraigned.

■ Appellant claims that the statement was the product of an unnecessary delay between arrest and arraignment and, therefore, inadmissible at trial.[2] In *Commonwealth v. Williams*, 455 Pa. 569, 572, 319 A.2d 419, 420 (1974), we stated:

"Rule 118 [now Pa.R.Crim.P. 130] provides, inter alia, that '[w]hen a defendant has been arrested without a warrant, he shall be taken without unnecessary delay

**2.** Appellant also challenges the statement's admissibility on grounds of voluntariness. Because of our determination on the *Futch* claim, we need not reach appellant's alternative argument.

before the proper issuing authority where a complaint shall be filed against him.' We have delineated a three-part test to be used when inquiring into an alleged violation of Rule 118. The delay must be unnecessary; evidence that is prejudicial must be obtained; and the incriminating evidence must be reasonably related to the delay." [3]

The Commonwealth argues that Rule 130 and *Commonwealth v. Futch, supra,* are inapplicable in the instant case, as they urge that appellant was never placed under arrest until 10:00 a. m., when both DeVore and Ms. Lewis gave statements implicating appellant.

The Commonwealth bases its argument on the following findings of fact filed by the suppression court:

"3. Defendant was not arrested but voluntarily accompanied police officers to the Police Administration Building at 8th and Race Streets when he was told that he was to be questioned as a material witness in the shooting of the deceased.

\*      \*      \*      \*      \*      \*

"5. The defendant was transported in a patrol wagon from 12:40 a. m. on December 2, 1974 and arrived at the Police Administration Building at 1:10 a. m. Defendant was then advised that he was being held as a material witness and was given the standard police interrogation card warnings to witnesses (Form 75—Misc. 3), by Detective Dougherty who left him alone until 1:38 a. m.

\*      \*      \*      \*      \*      \*

"13. The defendant was in custody as a material witness in this homicide investigation from 12:40 p. m. until 10:04 a. m., a period of almost ten hours.

"14. The status of the defendant changed at approximately 10:04 a. m. to that of a defendant in the homicide

---

**3.** In *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977), we held that unless a defendant is arraigned within six hours of arrest, any statements obtained between arrest and arraignment are inadmissible. *Davenport,* however, applies only to arrest made after May 15, 1977, and is thus inapplicable to the instant case.

investigation from his previous status as a material witness.

\* \* \* \* \* \*

"16. The period of ten hours during which the defendant waited as a material witness was a period when the detectives were interviewing other witnesses including Linda Lewis and Larry DeVore and obtaining statements from them as a necessary part of the investigation."

As the preceding findings of fact contain conclusions concerning a question of legal status, i. e., was appellant under arrest, they contain both factual findings and legal conclusions. In *Commonwealth v. Goodwin,* 460 Pa. 516, 522, 333 A.2d 892, 895 (1975), we stated:

" . . . [O]ur responsibility upon review [of a suppression court] is to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings."

In *Commonwealth v. Bosurgi,* 411 Pa. 56, 68, 190 A.2d 304, 311 (1963), we stated:

" . . . An arrest may be accomplished by 'any act that indicates an intention to take [a person] into custody and subjects him to the actual control and will of the person making the arrest' (Quoting from 2 Am.Jur.2d Arrest, § 1 at 695)."

We further stated in *Commonwealth v. Farley,* 468 Pa. 487, 364 A.2d 299, 302 (1976):

" . . . an arrest cannot be disguised by the use of such terms as 'investigatory detention.' *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Commonwealth v. Fogan,* 449 Pa. 552, 556–57, 296 A.2d 755, 758 (1972). When a person is actually restrained of his freedom by the police and taken into custody, an arrest has occurred and the constitutional protections must be observed."

We believe the principle set forth in *Farley* is applicable to the instant case.

■ When appellant was placed in the police van, he was handcuffed after police found five spent shell casings in his pocket. Further, the suppression court found that appellant was never advised that he was free to leave the Police Administration Building, and this finding was supported by the evidence. In these circumstances, we believe appellant was arrested, thus triggering the protections afforded by Pa.R.Crim.P. 130 and *Commonwealth v. Futch, supra.* See also *Commonwealth v. O'Shea,* 456 Pa. 288, 318 A.2d 713 (1974).

In *Commonwealth v. Williams, supra,* 455 Pa. at 572, 319 A.2d at 420, we stated:

" . . . We have delineated a three-part test to be used when inquiring into an alleged violation of Rule 118 [now Rule 130]. The delay must be unnecessary; evidence that is prejudicial must be obtained; and the incriminating evidence must be reasonably related to the delay. . . . "

Here, we have a delay of approximately nine hours between appellant's arrival at the police station and his giving of an inculpatory statement. As we stated in *Commonwealth v. Williams, supra,* 455 Pa. at 573, 319 A.2d at 421, "It must be emphasized that pre-arraignment delay will always be unnecessary unless justified by administrative processing—fingerprinting, photographing and the like. . . . "

■ The Commonwealth argues that the delay was justified because police had to investigate appellant's story about the two men in a 1968 blue Cadillac El Dorado. In *Commonwealth v. Whitson,* 461 Pa. 101, 334 A.2d 653 (1975), the defendant gave police a statement which allegedly detailed his activities around the time of the murder. We held that a delay to investigate the defendant's story was a necessary delay. We believe, however, that *Whitson* is inapplicable, as in the instant case, police picked up two individuals in a 1968 blue Cadillac El Dorado fitting appellant's description at 12:30 a. m. After appellant arrived at police headquarters at 1:00 a. m., police used the next nine

hours to question appellant, Ms. Lewis, DeVore and the occupants of the Cadillac. Such questioning alone does not justify a delay.

■ Because the Commonwealth has advanced no acceptable justification for the nine-hour delay, we believe that delay is unnecessary by our definitions.

■ The evidence is clearly prejudicial. Because appellant's oral statement was inculpatory, the second part of *Williams* is met. See *Commonwealth v. Davenport, supra,* 471 Pa. at 284, 370 A.2d at 305.

The Commonwealth contends, however, that appellant's confession does not violate Rule 130 because there is no nexus between the unnecessary delay and the confession. The Commonwealth argues that the confession was not the result of the unnecessary delay; rather, appellant's confession resulted from the statements of Ms. Lewis and DeVore, both of which implicated appellant. We do not agree.

In *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974) the defendant refused to admit complicity in the crime charged. After lengthy interrogation, appellant was given a polygraph examination. Only after being informed that he had failed the polygraph test did the defendant confess. In that case, we stated, 457 Pa. at 204, 321 A.2d at 612, " . . . we are convinced that appellant would not have changed his mind were it not for the events which transpired during the delay." We believe the same principle is applicable to the instant case.

■ Appellant originally denied involvement in the homicide and told police that two men in a blue Cadillac had shot the victim. During the nine-hour delay, police interrogated·appellant, the two occupants of a blue Cadillac, Ms. Lewis and DeVore. We believe that only because of events which transpired during the delay, i. e., the obtaining of the statements which implicated appellant, did appellant confess. In *Cherry,* we found the required nexus between the confession and the delay. In the instant case, we again find that the required nexus has been established.

Judgments of sentence reversed and case remanded to the Court of Common Pleas of Philadelphia for a new trial.

EAGEN, C. J., dissents.

POMEROY, J., dissents.