406 A.2d 1068

**COMMONWEALTH of Pennsylvania**

v.

**Louis J. ALLESSIE, Appellant.**

Superior Court of Pennsylvania.

Argued May 7, 1979.

Decided June 27, 1979.

Michael E. Dunlavey, North East, for appellant.

Robert H. Chase, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before VAN der VOORT, LARSEN and LAVELLE, JJ.*

LAVELLE, Judge:

At about 10:00 a. m. on February 2, 1977, the body of William Berry was found in the front seat of his 1974 Opel Manta automobile, which was parked in an alley in the City of Erie. On February 3, 1977, Nora Hornaman, the last person known to have seen decedent alive, telephoned the police and told them that she suspected Louis Allessie, the appellant, although, she said, she had no grounds for her suspicions. Other than her phone call, the police had no indication that he was involved in the crime.

At 6:38 p. m. February 4, 1977 appellant, who was then driving his motor vehicle, was stopped by two detectives at the intersection of 21st and Greengarden Streets, by the tactic of blocking the roadway with their vehicle. Allessie was asked to get out of his vehicle, his constitutional rights were read to him and a pat-down search of his clothing was conducted. The detectives refused to permit him to operate his own vehicle to the police station; instead, they placed him in the police vehicle and took him there. When they arrived, he was placed in an interrogation room and his constitutional rights were read to him again. During the time he was in custody he was visited by his parish priest, who observed him in handcuffs. At no time was he told that he was free to go from police custody. At about 3:30 a. m. on February 5, 1977 he gave a statement inculpating himself in the killing. The statement was made without physical abuse or threats from the police. A warrant for his arrest was issued at approximately 4:00 a. m. on February 5, 1977 and he was arraigned shortly thereafter. After a jury trial, he was found guilty of murder in the third degree.

* Justice Rolf Larsen of the Supreme Court of Pennsylvania and Judge John E. Lavelle of the Court of Common Pleas of Schuylkill County, Pennsylvania, are sitting by designation.

338

Appellant filed a motion to have the inculpatory statement and a slip of paper taken from his wallet suppressed, he objected to the admission of these items at trial, and he has preserved this issue for appeal.

The Commonwealth contends that at most the appellant was subjected to "arrest, in the broadest sense for interrogation," and, since he was given his constitutional rights on several occasions prior to his confession, the suppression and trial court was correct in admitting his confession into evidence. We disagree.

■ *Pa.R.Crim.P.* No. 130 and *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972) and its progeny are specifically designed to put a stop to the practice of arresting an individual and holding him during a lengthy period while continuing the investigation and the interrogation of the individual before arraigning him. *Commonwealth v. Cherry,* 457 Pa. 201, 205, 321 A.2d 611, 613 (1974). Rule 130 and *Commonwealth v. Futch,* supra, require that after an arrest an accused be brought before a magistrate for arraignment without unnecessary delay.

■ An arrest is accomplished by any act which indicates an intention to take a person into custody and subjects him to the actual control and will of the person making the arrest. *Commonwealth v. Morton,* 475 Pa. 374, 380 A.2d 769 (1977). An arrest cannot be disguised by the use of such terms as "investigatory detention" or detention "for interrogation." When a person is actually restrained of his freedom by the police and is taken into custody, an arrest has occurred in law and in fact and constitutional protections must be observed. *Commonwealth v. Farley,* 468 Pa. 487, 495, 364 A.2d 299, 302 (1976); *Commonwealth v. Morton,* supra.

When appellant's progress upon the public streets of Erie was interrupted by the positioning of a police vehicle across his path of travel, he was directed to get out of the vehicle. See *Commonwealth v. Greber,* 478 Pa. 63, 67, 385 A.2d 1313, 1316 (1978). A "pat-down" search of his person was done by

the officers, and his *Miranda* rights were read to him. He was refused permission to drive his own vehicle to the police station and the officers placed him in a police vehicle, took him to the police station, placed him in an interrogation room and again read his *Miranda* rights to him. At no time from when he was stopped until his arraignment was he advised that he was free to leave. He was observed by his parish priest at approximately 2:00 a. m. in handcuffs. He was interrogated about the killing of Berry and the police had him go through his wallet "to help him remember." They also searched his apartment and his vehicle "to help him remember." Nine hours after he was taken into custody, appellant gave the police a confession, and ten hours after he was taken into custody a warrant was obtained for his arrest. He was arraigned sometime after that.

■ In addition to the foregoing, appellant was arrested without a warrant solely upon the basis of a telephone call from a person who claimed she suspected appellant of being involved in the killing and who qualified her suspicion by telling the police that she had no grounds for her suspicion. Clearly, he was arrested at a time when the police lacked probable cause to arrest. *Steding v. Commonwealth*, 480 Pa. 485, 391 A.2d 989 (1978); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963). Therefore, the Commonwealth was required to establish that the slip of paper and the confession was the product of some cause other than the illegal detention. Its evidence showed only their exploitation of the illegal detention to cause appellant to confess. *Commonwealth v. Bailey*, 460 Pa. 498, 333 A.2d 883 (1975).

■ It is clear, therefore, that appellant's confession was made while in police custody as a result of an illegal arrest, and while such detention was being exploited by the police to produce the confession, there exists a causal nexus between the illegal arrest and the statement. *Commonwealth v. Barnett*, 471 Pa. 34, 369 A.2d 1180 (1977). The record demonstrates that the delay between arrest and arraignment was unnecessary, that evidence prejudicial to the appellant was obtained from him by the police during such

detention, and that the incriminating evidence and confession was reasonably related to the delay. *Commonwealth v. Williams*, 455 Pa. 569, 572, 319 A.2d 419, 420 (1974). The confession and the slip of paper was therefore the fruit of the initial illegal arrest and nine and one-half hours of detention, and as such should have been suppressed. *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977); *Commonwealth v. Barnett*, supra; *Commonwealth v. Brooks*, 468 Pa. 547, 364 A.2d 652 (1976); *In re Betrand*, 451 Pa. 381, 303 A.2d 486 (1973).

In his closing argument, the prosecutor referred to evidence that the defendant took a gun from a truck and followed the decedent and Nora Hornaman (with whom the defendant had lived sometime previously) on Monday night, January 31st, after the couple left a tavern, but lost them in traffic. The prosecutor commented that if it hadn't been for the traffic on the Monday night before the actual murder, there would have been a double homicide. His comment sought to have the jury draw an inference from competent evidence of record and to argue the purpose of the defendant in obtaining a gun and following the decedent and Miss Hornaman the night before the actual murder. The remarks were not advanced simply to inflame the passions of the jury. *Commonwealth v. Hughes*, 477 Pa. 180, 383 A.2d 882 (1978).

■ Since the closing argument was recorded, an objection at the close of the prosecutor's remarks is timely. *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Adkins*, 468 Pa. 465, 364 A.2d 287 (1976).

■ We find no merit to appellant's complaint that he was precluded from cross-examining a police officer as to a prior inconsistent statement alleged to have been made by the officer at a suppression hearing. The record indicates that defense counsel withdrew his question before the Court ruled.

■ Although the jury was not sequestered, the record demonstrates that the jurors were instructed by the trial

court not to listen to any radio or television news accounts, nor to read any newspaper accounts of the trial. They were further cautioned not to discuss the case with anyone, even members of their own families. Whether to sequester a jury is a matter vested in the discretion of the trial judge, *Pa.R.Crim.P.* No. 1111, *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976). We find no abuse of discretion in the trial judge's refusal to sequester the jury.

Judgment of sentence reversed and new trial granted.