422 A.2d 1336

**COMMONWEALTH of Pennsylvania**

v.

**Larry E. HAGGERTY, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed Aug. 29, 1980.

Reargument Denied Dec. 24, 1980.

Petition for Allowance of Appeal Granted Feb. 3, 1981.

John J. Morgan, Butler, for appellant.

William G. Martin, Jr., Assistant District Attorney, Franklin, for Commonwealth, appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

PRICE, Judge:

Appellant was arrested on charges of arson[1] and burglary[2] of the Franklin High School, Franklin, Pennsylvania and tried before a jury which found him innocent of arson but convicted him on the burglary charge. Following the denial of post–trial motions, he was sentenced to seven and one–half (7½) to fifteen (15) years of imprisonment. He takes this appeal challenging the admission into evidence of his confession, the sufficiency of the evidence, and the length of his sentence. We are constrained to agree that appellant's confession was improperly admitted, and we, therefore, reverse the judgment of sentence and remand for a new trial.[3]

As revealed at the suppression hearing, the following events form the context in which the confession occurred. On October 20, 1977, five days after the occurrence of the fire and burglary of the Franklin High School, two state police officers, Troopers Thomas A. May and James M. Bunyak, arrived in plain clothes at appellant's home shortly after 11:00 a. m. Appellant, who was still in bed, was awakened by his wife to speak with the troopers. The troopers requested that appellant accompany them to the police barracks to review a statement that he had made a few days earlier concerning his whereabouts on the morning of the fire. In this statement, appellant had given no indication that he was connected with the fire. At about 11:10 a. m., appellant agreed to accompany the troopers in their patrol car. He was seated alone in the back seat of the car and the doors remained unlocked.

They arrived at the barracks at approximately 11:20 a. m., and appellant was taken to the crime report room, which contained several desks and chairs. Trooper May read ap-

1. 18 Pa.C.S. § 3301.

2. 18 Pa.C.S. § 3502.

3. Because of our disposition on this issue we find it unnecessary to address appellant's challenge of the length of his sentence.

pellant his *Miranda* rights and proceeded to question him about the fire for approximately one hour. Appellant continued to deny any involvement, and at the end of this period consented to take a polygraph test. The polygraph examiner was already on the premises testing another individual, and appellant had to wait over an hour before the test could be administered. During this time, Trooper May remained with appellant and they carried on some small talk. The test began between 2:00 and 2:30 p. m. and lasted until sometime after 3:00 p. m., when the examiner informed Trooper May that appellant had admitted his involvement in the fire. From this time forth, the Commonwealth admits that appellant was under arrest.

Trooper May took a tape recorded statement from appellant (which he later refused to sign on the advice of an attorney). He was fingerprinted and photographed, and at his request, Troopers May and Bunyak took him back to his house to speak with his family. The troopers then transported appellant to the area in which he confessed to having thrown some of the evidence. Finally, he was taken to the magistrate's office, where he was arraigned at 5:55 p. m.

■ Appellant argues that his statement was improperly admitted into evidence in violation of the rule set forth in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), because he was not arraigned within six hours of his arrest, during which time the statement occurred. He contends that he was taken into custody when he entered the patrol car with the troopers at his home at 11:10 a. m. on October 20, 1977, and therefore, the arraignment occurred six hours and forty–five minutes after his arrest. The Commonwealth contends that appellant was not placed under arrest until the time of his first admission sometime after 3:00 p. m. of that day, thus placing the arraignment within six hours of the arrest. To resolve this issue, we must carefully examine the conduct that will constitute an arrest and the prospective from which that conduct is to be interpreted. We are mindful that the scope of our review of an order of a suppression court is limited to a determination

whether the record supports the factual findings of the court and the legitimacy of the inferences and legal conclusions drawn from these findings. *Commonwealth v. Morton*, 475 Pa. 374, 380 A.2d 769 (1977); *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975). In making our assessment, we will consider only evidence of the prosecution's witnesses and the evidence of the defense that remains uncontradicted when fairly read in the context of the suppression hearing record. *Commonwealth v. Powers*, 484 Pa. 198, 398 A.2d 1013 (1979); *Commonwealth v. Hitson*, 482 Pa. 404, 393 A.2d 1169 (1978).

█ Arrest has frequently been defined as any act that indicates an intention to take an individual into custody and subjects him to the actual control and will of the person making the arrest. *Commonwealth v. Farley*, 468 Pa. 487, 364 A.2d 299 (1976); *Commonwealth v. Allessie*, 267 Pa.Super. 334, 406 A.2d 1068 (1979). Thus, the use of force or the making of a formal statement of arrest is not necessary to effectuate an arrest. *Commonwealth v. Farley, supra.* The question is viewed in light of the reasonable impression conveyed to the person subjected to seizure or detention rather than in terms of the state of mind of the police officers involved. *Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978); *Commonwealth v. Richards*, 458 Pa. 455, 327 A.2d 63 (1974). It does not follow from this tenet, however, that an individual is under arrest whenever he so believes. Our consideration must be focused on the objective circumstances and the responses that they are most likely to evoke.

█ The Commonwealth argues that the arrest did not occur when appellant was transported to the police station or was initially questioned, because he voluntarily accompanied the police officers, cooperated in the questioning and was not restrained in any way. We are faced with the difficulty of determining whether genuine consent was present or whether appellant submitted in consequence of a reasonable belief and impression from the circumstances that submission was necessary because he was under the

power of the police officers. We find the facts warrant the latter conclusion.

Initially, while we decline, absent other facts, to find that accompanying police officers at their request would constitute an arrest because responsible citizens have an obligation to cooperate with the police, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), we recognize that an individual may realize that if he refuses to accompany them he may cast further suspicion upon himself. As has been aptly noted by one court, an invitation by one claiming police authority does not have "the options attendant upon a bid to a ball." *Alexander v. United States*, 390 F.2d 101, 108 (5th Cir. 1968).

Moreover, in the instant case, other facts were present indicating that appellant was not free to leave. Appellant had previously been questioned by Trooper Bunyak concerning his involvement in the fire, and the trooper had at that time considered it appropriate to question him at his home. The return of the police and their articulated desire to remove him to the police station to review his prior statement suggested that they did not entirely believe his first statement and that more than a brief interview was contemplated. This impression was further reinforced by the provision of the *Miranda* warning immediately following appellant's arrival.[4] In addition, appellant was never left alone, even during a substantial wait for the polygraph examina-

4. The Commonwealth argues that provision of a *Miranda* warning is necessary if an individual is questioned while he is either in custody or the object of an investigation, and therefore, the warnings to appellant are consistent with the proposition that he was merely the focus of a police investigation. In *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), however, the United States Supreme Court explained that one is the "focus" of an investigation only if he is in custody or deprived of his freedom of action in a significant way. Our supreme court has noted that although the Commonwealth has the power to extend broader protection than the minimum provided by the United States Constitution, in all prior cases in which warnings were required because a defendant was found to be the focus of an investigation, a deprivation of liberty was also present. *Commonwealth v. McLaughlin*, 475 Pa. 97, 379 A.2d 1056 (1977). *See Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980).

tion. *See Commonwealth v. Morton, supra; Commonwealth v. Richards, supra.* Thus, under the facts as found by the suppression judge,[5] the officers' conduct following their "request" that appellant accompany them asserted a right to detain him indefinitely at the police station, and we conclude that in these circumstances he was under arrest immediately following his arrival at the police station. *See Clewis v. Texas,* 386 U.S. 707, 711 n. 7, 87 S.Ct. 1338, 1341 n. 7, 18 L.Ed.2d 423 (1967); *Steding v. Commonwealth,* 480 Pa. 485, 391 A.2d 989 (1978) (request that suspect accompany police to a nearby office for further questioning was not investigative detention but was instead an arrest).

■ Although we have decided that appellant's confession was improperly admitted and a new trial is mandated, we must still address his claim that judgment should be arrested because the evidence was insufficient to support the verdict. We find this argument completely lacks merit.

In weighing the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner and evaluate all evidence received without regard to the correctness of the trial court's rulings thereon. *Commonwealth v. Harper,* 485 Pa. 572, 403 A.2d 536 (1979); *Commonwealth v. Boyd,* 463 Pa. 343, 344 A.2d 864 (1975). The record discloses that the recitals of appellant's confession were sufficient evidence to prove guilt beyond a reasonable doubt. Since there is no dispute that the corpus delicti was established by independent proof, the confession would be sufficient to convict even in the absence of other corroborative proof. *Commonwealth v. Palmer,* 448 Pa. 282, 292 A.2d 921 (1972). The instant record, however, offers even greater support of the conviction since it indi-

5. We find that in its review of appellant's post–trial motions raising the issue of prearraignment delay, the court of common pleas relied heavily upon statements made by appellant at trial which the court found indicative of lack of coercion, in particular, his testimony that at the time he departed with the police he left a message for his wife that he would be back in half an hour. These statements were not among the evidence before the suppression judge and should not be considered in reviewing his action.

cates that many of the facts alleged in the confession were verified by investigation. The motion in arrest of judgment was properly denied.

In accord with the above reasoning, we reverse the judgment of sentence and remand to the court of common pleas for a new trial.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I respectfully dissent. I would affirm on the well–reasoned opinion of President Judge Breene, of the court below. The appellant was not deprived of his freedom of action in a significant way prior to his arrest at 3:00 p. m. In addition, I would hold that the six (6) hour rule as promulgated by *Davenport* (supra), should not be so rigidly applied as to prevent a valid arraignment conducted 6 hours and 45 minutes following the detention of appellant.